853 So.2d 850 (2003)
Ronald Ray EVANS, Appellant,
v.
Dean MOORE, Executrix of the Estate of Mylinda Louann (Rodgers) Evans, Deceased, Appellee.
No. 2002-CA-00897-COA.
Court of Appeals of Mississippi.
August 26, 2003.
*851 H.R. Garner, Malenda Harris Meacham, Hernando, attorneys for appellant.
Gerald W. Chatham, Hernando, attorney for appellee.
Before SOUTHWICK, P.J., LEE and GRIFFIS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Ronald Evans appeals from a summary judgment that found his former wife's estate to be the owner of a certain life insurance policy covering her life. However, the ultimate issue in the suit is whether Mr. Evans is the proper beneficiary under such a policy. That question is not answered by a judgment about who is its owner. We dismiss since this is an interlocutory appeal for which the necessary certification has not been given.

FACTS
¶ 2. Ronald and Mylinda Evans were divorced in April 1996. At a hearing in January 1996, there was a discussion among the chancellor, both parties and their counsel regarding ownership of two term life insurance policies. One policy apparently insured the husband's life and named his wife as beneficiary. The second was said to cover the wife's life and named her daughter, Brooke, as beneficiary. Though both policies have been referenced in these proceedings, the trial court granted relief only on one policy. It may not be either one mentioned in the 1996 hearing.
¶ 3. No policy is in the record. The parties are in seeming agreement that the chancellor's 2002 decision concerns a policy on Mylinda Evans's life that has Ronald Evans as the beneficiary. If he is not the beneficiary, then we do not understand this litigation. Mr. Evans had agreed in 1996 to convey any ownership that he might have in a policy on his soon-to-be former wife that had his wife's daughter Brooke as beneficiary. Perhaps there has been one policy on Mrs. Evans's life since 1996 that has had a change of beneficiary. Perhaps these are two different policies.
¶ 4. An excerpt from the 1996 hearing transcript reveals that Mrs. Evans stated she wished to keep policies both on her life and on Mr. Evans as she had been paying the premiums. Her husband, through counsel, agreed to take whatever action was necessary to transfer any ownership he might have in both policies. The reason for ownership to be transferred was not stated beyond what we have already indicated, namely, that Mrs. Evans had been paying the premiums but she thought her husband was the policy owner. Had the policies in question been in the record, we assume they would describe the rights that are possessed by owners. The court orally noted the in-court agreement but *852 did not mention it or require compliance with it in any order. Mrs. Evans made her sole effort to compel compliance in June 1996. She did not pursue the matter to decision then or ever. The estate is now attempting to do so.
¶ 5. In 1999, Mrs. Evans executed a holographic will. In this document, she described two policies insuring her life, one with a benefit of $300,000 to be paid to her daughter, and another with a benefit of $100,000 to be paid to her ex-husband. The will stated the testator's wish that each named beneficiary receive the proceeds as designated in the policies. Whether this $300,000 policy on Mrs. Evans with her daughter as beneficiary is the one in existence in 1996 is unknown. Though this will was replaced before her death by another will, there has been no argument that the will reflected anything other than Mrs. Evans's wishes at that time about the beneficiaries of property in her estate and of insurance. Whatever else may be gleaned from the 1999 will, it certainly appears that Mrs. Evans had a continuing interest in her ex-husband's finances.
¶ 6. Mylinda Evans died of cancer in February 2002. A few weeks before her death, she executed a formal will which properly did not mention insurance policies. Her mother, Dean Moore, was named executrix. Moore filed a petition for a temporary restraining order to prevent her former son-in-law from obtaining any proceeds from insurance on his former wife. The executrix also sought to have Mr. Evans held in contempt for failing to sign over ownership of the policies as agreed at the divorce hearing in January 1996.
¶ 7. The chancellor granted the restraining order. The petition for contempt was not ruled upon. After a later hearing, the estate's motion for summary judgment was granted. The chancellor found the estate to be the owner of "the policy in question." Though no order from the court ever identified the specific policy being contested, no one has disputed that the policy is one issued by State Farm Life Insurance Company and numbered LF XXXX-XXXX. Whether this is one of the policies that existed in 1996 is not shown in this record. The chancellor did not determine the proper beneficiary under the policy. The court ordered the insurer to pay the proceeds into the court until further order about the "ultimate disposition" of the "funds from those policies...." Mr. Evans informed the chancellor at the hearing that he would appeal. No discussion appears of whether this was seen as a partial summary judgment or the appeal as interlocutory.
¶ 8. This is the second appeal involving issues arising from the 1996 divorce. The first appeal was from the divorce decree itself. Mr. Evans's appeal was deflected to this Court. No cross-appeal by Mrs. Evans was made. In an unpublished opinion, we affirmed on all issuesnone of which concerned Mr. Evans's failure to comply with an alleged obligation to assign these policies. Evans v. Evans, 723 So.2d 1246 (table), 96-CA-00454 (Miss.Ct.App. Apr. 28, 1998).
¶ 9. In order to reveal what has already been decided by this Court regarding these two former spouses, we reproduce the initial part of that 1998 opinion. We note that the deceased was there referred to with the last name of Rodgers.

OPINION ON INITIAL APPEAL
¶ 10. The DeSoto County Chancery Court granted Ronald Ray Evans and Mylinda Rodgers Evans a divorce on the grounds of irreconcilable differences. Pursuant to the consent of the parties, the court resolved issues relating to an equitable distribution of the marital property, *853 alimony, and attorney fees. Mr. Evans appeals asserting that the chancery court erred in awarding Mrs. Rodgers periodic alimony of $800 per month and attorney fees. [Mr. Evans also alleged that the chancellor exhibited bias against his trial counsel.] Though represented by counsel below, he appeals pro se. Finding that these issues do not merit reversal, we affirm.

STATEMENT OF FACTS
¶ 11. The parties were married on December 23, 1983 and lived together until 1994. Although no children were born to them, Mrs. Rodgers had a daughter from a previous marriage. During the early years of the marriage, Mrs. Rodgers was employed as a beautician. In 1987, Mrs. Rodgers sustained injuries in an automobile accident and was totally disabled. Mr. Evans has been employed for a number of years with Waterman Industries Sales in Memphis, Tennessee, as a sales manager.
¶ 12. On January 29, 1996, Mrs. Rodgers and Mr. Evans consented to a divorce on the grounds of irreconcilable differences. The parties stipulated that the chancery court would resolve, among other things, issues concerning a division of the marital property, the awarding of alimony, and attorney fees. During a hearing on the matter, Mrs. Rodgers and Mr. Evans presented extensive testimony about their respective health and mental conditions, income and expenses, individual retirement accounts, and needs. The parties also introduced into evidence a written agreement which they had entered into following the completion of the marital residence. The agreement provided that upon the sale of the residence or the divorce of the parties, Mrs. Rodgers would receive $126,500 from the proceeds or from the equity in the residence, with any remaining proceeds or equity to be divided equally between the parties.
¶ 13. The chancellor found that the written agreement was valid and equitably divided the remaining marital property. The chancellor also awarded Mrs. Rodgers periodic alimony of $800 per month and attorney fees. On appeal, Mr. Evans alleges that the chancellor erred in awarding Mrs. Rodgers periodic alimony and attorney fees. [End of 1998 opinion.]

DISCUSSION
¶ 14. In 1998, we rejected the former husband's challenges to alimony and attorney fees. Now in 2003, Mr. Evans's sole appellate issue is the propriety of summary judgment on ownership of this policy. Partial or complete summary judgment may be granted when there are no disputed, material facts on a legal issue relevant to the litigation. M.R.C.P. 56. If the "judgment is not rendered on the whole case or for all relief asked," then other proceedings on the remainder must be held. M.R.C.P. 56(d). An appeal from an interlocutory judgment requires a request for certification by the trial judge that there is no need for delay in the appeal. M.R.C.P. 54(b). That did not occur.
¶ 15. The most useful focus to determine whether we have the entire case before us is to examine what the parties were seeking to accomplish in this litigation. The initial pleading after Mrs. Evans's death was a request for a temporary restraining order directed to State Farm. The estate said that it believed Mr. Evans "will attempt to cash in the proceeds of this policy and that the rightful beneficiary of said policy should be the minor child of the Decedent, Penny Brooke Dean." The suit, then, is about the payment of benefits under the policy. State Farm answered that it had no basis to respond to the *854 validity of most of the factual allegations. It argued that regardless of the various factual issues, the limit of its liability was the amount of insurance under policy number LF XXXX-XXXX. State Farm did not indicate anything else about the policy, including the party insured, the beneficiary, the amount of benefits, or whether it was one of the policies that existed in 1996.
¶ 16. Several related but far from identical issues have circulated in this case. Pleadings reveal without dispute but also without evidence that in 1996 there were two policies affected by the agreement to assign ownership, one on Mylinda Evans with her child Brooke as the beneficiary, and the other on Ronald Evans with Mylinda Evans as the beneficiary. Neither policy apparently was ever assigned. The policy on Mr. Evans's life has not been an issue in this litigation. The only issue decided so far is that Mr. Evans should not be the owner of a specific State Farm policy on his wife's life. Certainly implicit in this suit is that Mr. Evans is a current beneficiary under that policy, but he was not the beneficiary in the policy he agreed to assign in 1996. According to the holographic will, at least one other policy on Mrs. Evans's life existed by 1999.
¶ 17. Review is stymied by the inadequacy of the record. It is admitted that the 1996 policy on Mrs. Evans's life was a term policy with no cash value. Mrs. Evans testified in 1996 that she had been paying the premiums. She may have continued to pay the premiums on that same policy up until her death despite the failure of any assignment of ownership to her. She may instead have purchased two new policies by 1999. If so, Mrs. Evans likely was the owner of the new policies.
¶ 18. It is true that Mr. Evans never alleged as a defense that the policy that he had agreed to assign in 1996 no longer existed. Yet he was the defendant. It was the estate as plaintiff that had to present evidence that it was the same policy. If instead a new policy has replaced it that was purchased by Mrs. Evans, then the 1996 order likely was moot. There is no evidence here that Mr. Evans even had an ownership interest in the policy that is being questioned.
¶ 19. The chancellor rejected laches and waiver as grounds to find that whatever was agreed in 1996 was no longer operative by 2002. His ruling seemed based on the fact that a court order had been entered in 1996 on other property issues premised on the agreement to assign ownership. Whether assigning of ownership was an implied term of the property settlement and whether a party in whose benefit the term existed may abandon her rights to enforce it are not properly before us. We will shortly explain that no final judgment has yet been entered and we dismiss this appeal. Our failure to address the waiver issue does not indicate any conclusion about the resolution so far.
¶ 20. The chancellor found that the policy was owned by the estate but said that it "makes no finding regarding the beneficiary of said policy." State Farm was ordered to pay the proceeds into the court until further order about the "ultimate disposition" of the "funds from those policies...."
¶ 21. We find nothing on this record to support that the determination of ownership of this policy resolved any relevant issue in this case. Ownership during an insured's lifetime bestows a variety of rights in the policy. Though the specific policy might define the rights of the owner somewhat differently, we find useful on this scant appellate record to point to a neighboring state's descriptions of the incidents of ownership of an insurance policy:

*855 The policy owner is entitled to the lifetime benefits payable under the insurance policy, that is, those exercisable by the owner pursuant to policy terms and provisions, during the lifetime of the owner. These benefits include: the right to cash surrender value, receive dividends, assign or pledge policy proceeds, borrow against the policy, name and change of beneficiary, and execute conversion rights.
Succession of Jackson, 402 So.2d 753, 756 (La.Ct.App.1981).
¶ 22. We are not concerned with such matters as the right to borrow against the policy, cash surrender value, or beneficiary change. The policy owner's rights largely end at the death of the insured. The policy beneficiary then has a right to the proceeds, which until death is only an expectancy. At the insured's death the right to change the beneficiary no longer exists; the rights of the beneficiary have vested. See DeFoe v. Great Southern Nat'l Bank, 511 So.2d 912 (Miss. 1987); 4 COUCH ON INSURANCE § 27:64 (1984). In some circumstances a constructive trust may be imposed on the benefits in order that they are ultimately paid to someone else despite the vesting. Davidson v. Davidson, 667 So.2d 616, 620 (Miss. 1995). That principle also is unrelated to ownership.
¶ 23. We admit to some uncertainty in the relief being sought. In the first petition for a temporary restraining order and in the motion for summary judgment, the estate asked for determination of ownership of the policy. In the amended petition, it asked for determination of ownership of the funds. In the answer to both petitions, the respondent argued that the money was the real issue, not policy ownership. The entirety of the summary judgment hearing was dedicated to ownership of the policy. Nonetheless, at the conclusion of the hearing, the trial judge ordered the proceeds of the policy to be paid into the court to await further order on the proper beneficiary. The need to name the proper recipient for the funds was recognized in pleadings and in the court's decision.
¶ 24. Indeed, if the issue of the proper beneficiary were not raised, then there would be no apparent actual controversy to decide. As already explained, until the death of the insured, the ownership of a life insurance policy is a vital question. After death of the person insured, the question is largely moot. Mississippi rules on standing of a party to bring suit are said to be more liberal than in the federal system. Van Slyke v. Bd. of Trustees of State Institutions of Higher Learning, 613 So.2d 872, 880 (Miss.1993) (state constitution does not limit suits to "actual case or controversy" as does federal constitution). This does not mean any person may sue any other on any issue. A plaintiff still normally must "assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant...." Harrison County v. City of Gulfport, 557 So.2d 780, 782 (Miss.1990). The judicial "review procedure should not be allowed for the purpose of settling abstract or academic questions, and [ ] we have no power to issue advisory opinions." Allred v. Webb, 641 So.2d 1218, 1220 (Miss.1994).
¶ 25. An example of this was in a suit brought by the chairman of one of two competing factions in a political party. It was argued that his faction's candidates should be the only ones of that party on the ballot. The appeal was not resolved until after the election. "A reversal and remand would be entirely useless as to matters already discharged." Sheldon v. Ladner, 205 Miss. 264, 265-270, 38 So.2d 718, 718-19 (1949). The case was moot and dismissed. In our case, what once *856 was an important matter of policy ownership was even before filing of the suit no longer consequential.
¶ 26. We find that if ownership of this policy were the sole question presented, then on the record before us, that was academic and beyond the proper invocation of court procedures. However, the estate has always sought to prevent benefits from being paid to Mr. Evans. Nothing significant on that matter has yet been determined. The identity of the beneficiary was an issue in the case and apparently was reserved. Since all pertinent issues have not been resolved, the appeal is interlocutory and its dismissal is appropriate. If one of the parties continues to believe that ownership of the policy is relevant, then the reason can be shown in new proceedings below at the same time as the defects in evidence about the policy are addressed.
¶ 27. This appeal was taken from what was in effect a partial summary judgment. Usually, an appeal may only be taken "from any final judgment of a circuit or chancery court in a civil case...." Miss. Code Ann. § 11-51-3 (Rev.2002). The right to appeal from something other than a final judgment has been granted by rule and begins with a request to the trial judge to certify that there is no just reason for delay. See M.R.C.P. 54(b); M.R.A.P. 5. It would have been difficult to justify a certification here since ownership is not the issue. Certification was neither sought nor given.
¶ 28. This is an improper interlocutory appeal. We dismiss.
¶ 29. THE APPEAL FROM THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS DISMISSED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.