963 So.2d 1185 (2007)
MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY, Appellant
v.
PRODUCT CONNECTIONS, LLC, Appellee.
No. 2006-CC-00078-COA.
Court of Appeals of Mississippi.
April 24, 2007.
Rehearing Denied September 4, 2007.
*1186 Albert B. White, Madison, attorney for appellant.
Gwendolyn Baptist Hewlett, attorney for appellee.
Before LEE, P.J., ROBERTS and CARLTON, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. From May 22, 2004, until June 18, 2004, Donis Chatham worked for Product Connections (PC) as a product demonstrator. Shortly after ceasing her work with PC, Chatham filed a claim for unemployment benefits with the Mississippi Department of Employment Security (MDES). After an investigation MDES ruled that an employer/employee relationship existed between Chatham and PC, thus the amount paid to Chatham and all other workers in that class should be reported as employee wages and unemployment taxes paid. PC appealed this decision and a hearing was held. On April 5, 2005, Timothy Rush, the hearing officer, affirmed the decision of MDES. PC appealed to the Board of Review, which affirmed Rush's decision. PC then appealed to the Hinds County Circuit Court. The trial court reversed the decision of the Board, finding that Chatham and other similarly situated product demonstrators were independent contractors and not employees of PC.
¶ 2. The MDES now appeals to this Court asserting the following issues: (1) the trial court erred by failing to find substantial evidence that Chatham was an employee of PC; (2) the trial court erred by finding that PC proved Chatham was an independent contractor; and (3) the trial court acted arbitrarily and capriciously *1187 by failing to follow case law showing that Chatham was an employee of PC. As all of MDES's issues are related to whether there was substantial evidence for the trial court to reverse the decision of the Board, we will address them together.

STANDARD OF REVIEW
¶ 3. Our restrictive standard of review for administrative appeals is well known. In the absence of fraud and if supported by substantial evidence, an order from a Board of Review on the facts is conclusive in the lower court. Miss. Employment Sec. Comm'n v. PDN, Inc., 586 So.2d 838, 840 (Miss.1991). On appeal, employees have the burden of overcoming a rebuttable presumption in favor of the Board's decision. Miss. Employment Sec. Comm'n v. Noel, 712 So.2d 728, 730(¶ 5) (Miss.Ct.App.1998). The denial of benefits may be disturbed only if (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights. Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993). Furthermore, the burden of proof is upon the party seeking to show that the worker is not an employee. PDN, Inc., 586 So.2d at 840.
¶ 4. The supreme court has "articulated the additional principle that employment security contribution assessments are an excise tax and, therefore, every doubt as to their application must be resolved in favor of the taxpayer and against the taxing power." Id.

DISCUSSION
¶ 5. This Court has specific factors to consider when determining the type of employment relationship, whether employee/employer or independent contractor. The factors to consider are:
(1) The extent of control exercised over the details of the work;
(2) Whether or not the one employed is engaged in a distinct occupation or business;
(3) The skill required in the particular occupation;
(4) Whether the employer supplies the tools and place of work for the person doing the work;
(5) The length of time for which the person is employed;
(6) The method of payment, whether by the time or by the job; and
(7) Whether or not the work is a part of the regular business of the employer.
PDN, Inc., 586 So.2d at 841-42 (citing Miss. Employment Sec. Comm'n v. Plumbing Wholesale Co., 219 Miss. 724, 69 So.2d 814 (1954)). However, the central issue to be considered in determining whether an individual is an employee or an independent contractor is whether the employer has the right to exercise control over the work of the employee. Estate of Dulaney v. Miss. Employment Sec. Comm'n, 805 So.2d 643, 646(¶ 13) (Miss.Ct. App.2002). Our supreme court has previously held that "one may be actually under slight supervision or control but still be an employee where the right of control existed and the service performed was a part of the regular business of the alleged employer." Miss. Employment Sec. Comm'n v. Logan, 248 Miss. 595, 600, 159 So.2d 802, 804 (1964).
¶ 6. Mississippi Code Annotated Section 71-5-11 J(14) (Supp.2006) sets forth the necessary requirements for an employer-employee relationship to be established.
Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that such individual has *1188 been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.
¶ 7. PC contracted with various manufacturers/retailers to provide product demonstrators as needed by the manufacturer. PC would then contact area coordinators who in turn contacted a product demonstrator to perform available jobs. The demonstrators would provide their own transportation and equipment for each job. PC never provided the demonstrators supplies, tools or materials. The demonstrators were supplied an information kit from the manufacturer of the product for which they were providing a demonstration. This kit contained all the instructions for the particular demonstration, including dates, length of demonstration, break times, appropriate dress code, specific instructions on how to conduct the demonstration, a name tag and other items relevant to the particular product such as sampling cups, gloves, or a hair net. Chatham testified that if she had to buy samples for a demonstration a check was included in the kit. Although Chatham believed the check was from PC, she was certain that this check was always made payable to Wal-Mart, where she conducted all of her demonstrations.
¶ 8. If a demonstrator experienced any problems during a demonstration, he or she was instructed to contact the manufacturer. According to one of the attached exhibits, if a demonstrator was unable to report to the store at the scheduled time, he or she was instructed to contact the manufacturer as well as the "agency," in this case PC. However, Joanne Whalen, the operating owner of PC, testified that it was acceptable for a demonstrator to get a replacement without notifying PC. Whalen also stated that she could not guarantee future jobs for demonstrators. Whalen further stated Wal-Mart, one of PC's customers, requires PC to carry workers' compensation coverage and liability coverage on the demonstrators. The aforementioned exhibit, which was sent by the manufacturer, also requires the demonstrator to conduct a "pre-event store check" wherein the demonstrator would contact the store or food manager, introduce themselves, locate the product to be sampled and verify the date and time of the event.
¶ 9. After each job, the demonstrator completes a form included in the kit and sends it to PC. PC in turn mails these forms to the manufacturer. The demonstrators are paid by the job and, although their checks issue from PC, the amount is determined by the manufacturer. PC receives a fee from the manufacturer which is deducted from the amount of compensation before being distributed to the demonstrators. The area coordinator also receives a booking fee.
¶ 10. The Board adopted the Hearing Officer's decision, which found the following:
The employer hired the individuals to perform a specific service, which was integral to the employer's on-going operations and not something performed on an intermittent as-needed basis. The mere fact that the employer issued the claimant and other workers Form 1099 for tax purposes does not in any way alter the fact that there did exist a master/servant relationship in this case. The fact that the owner did not visit the demonstration job site did not alter the fact that the owner reserved the right to direct the coordinator and the demonstrator as to how to perform their work to the clients and employer's expectation. Either party could terminate their *1189 [sic] working relationship without liability to the other party. The hearing officer is also of the opinion that the decision of the Chief of the Contribution and Status Department is in order and will be affirmed.
The decision of the Chief of the Contributions and Status Department is in the form of a letter to PC. Pertinent parts of this decision are as follows:
The information shows the worker performed services under the firm's name. The worker reported to the firm. The worker received written instructions. The worker was provided materials used in the demonstration. The worker was paid an hourly rate. The worker was required to make purchases at the beginning of each day which was used as a time card. The worker was given a lunch break if the demonstration was 6 hours long. The worker was required to work the hours assigned. The worker was required to call the firm if late or absent or unable to start or complete an assignment. The firm had a dress code. The firm carried Workman's Compensation Insurance. The worker was an integral part of the firms operation. The worker had no investment in a business and did not stand to make a profit nor suffer a loss. Either party could terminate services without liability.
¶ 11. These opinions by the hearing officer, which the Board accepted, and by the status chief, are not based on substantial evidence. In fact, the letter by the status chief clearly misstates the relationship between Chatham and PC. The record is clear that PC did not provide materials or instruction, other than the place and date of the demonstration, to Chatham. PC did not instruct Chatham as to when to take lunch breaks. Chatham was paid by the job and performed services for the manufacturer/retailer. The name tag included in the demo kit had the manufacturer's logo on it. The demonstrator was required to work the hours assigned, but these hours were set by the manufacturer. The demonstrator was instructed by the manufacturer to contact the retailer prior to the demonstration in order to verify the date and time of the event. The hearing officer states that the "owner" reserved the right "to direct . . . the demonstrator as to how to perform their work to the clients and employer's expectation." It is unclear as to whom the hearing officer is referring when using the term "owner." If the owner is PC, then the hearing officer misstates the facts. If the owner is the manufacturer/retailer, then that statement would not support an employer/employee relationship. Another misstatement of fact by the hearing officer concerns his finding that these jobs were not performed on an as needed basis. However, the testimony is clear that demonstrators were only contacted after the manufacturer contacted PC and informed PC of an available job. Chatham was only contacted when the manufacturer needed a demonstrator. If Chatham declined the job, which she was free to do, then another demonstrator was contacted.
¶ 12. Careful scrutiny of the record fails to support the Board's conclusion that Chatham was an employee of PC. The trial court was correct in reversing the Board's decision and we affirm.
¶ 13. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED.
MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J. AND CHANDLER, J., NOT PARTICIPATING.