BARNES, J.,
 

 for the Court.
 

 ¶ 1. EMC Enterprises, Inc. (“EMC”) appeals the Circuit Court of Hinds County’s decision to affirm the denial of its appeal by the Mississippi Department of Employment Security Board of Review (Board of Review). Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In order to address the issues in the present case adequately, we must discuss antecedent events. In 1995, Mary Stevens, a product demonstrator (demonstrator) for EMC, a Louisiana corporation which provides demonstration services to manufacturers, food brokers, and marketing companies, filed a claim for unemployment benefits with the Mississippi Employment Security Commission (now the Mississippi Department of Employment
 
 *148
 
 Security, or “MDES”). On February 5, 1996, MDES issued a decision stating that it considered the EMC demonstrator to be an independent contractor. The letter explained that this decision was based on a previous ruling by the Board of Review on appeal. That ruling involved a similarly-situated company and stated that an employer/employee relationship did not exist. However, the 1996 decision expressed that it was the personal opinion of Dale Smith, the MDES Chief of Contributions and Status, that the demonstrators and their supervisors, who were performing services for EMC in Mississippi, should be considered employees.
 
 [1]
 

 ¶ 3. The present case specifically concerns the application for unemployment benefits filed on April 18, 2004, by Donis C. Chatham, a demonstrator for EMC. On June 4, 2004, the MDES claims examiner ruled that Chatham had not refused work and, therefore, was not disqualified from receiving unemployment benefits. However, no determination regarding the charge-ability of EMCs account was made at that time. EMC filed an appeal on June 13, 2004, as to whether Chatham was disqualified from receiving unemployment benefits as she was an independent contractor.
 

 ¶ 4. On June 28, 2004, MDES sent a letter to EMC informing the company that it was conducting an investigation to determine whether Chatham, and all other workers in that class, were employees or independent contractors. MDES requested that EMC complete an “Independent Contractor Questionnaire” and return the forms by July 9, 2004. The attorney for EMC, David Grishman, timely submitted the forms, along with an “Application to Perform Contract Services” completed and signed by Chatham. On July 6, 2004, a telephonic hearing was held before a referee with the MDES Appeals Department regarding Chatham’s disqualification of benefits. Grishman represented the company at the hearing. Chatham did not participate in the hearing.
 

 ¶ 5. On July 21, 2004, the MDES referee rendered a decision finding not only that an “employer/employee” relationship existed between Chatham and EMC, but also that this classification applied to “all others in this class.” The decision, which stated that an appeal could be taken within ten days from the date of the letter, was mailed to EMC’s address of record. When no notice of appeal was received within the ten-day period, MDES sent EMC a status report on August 9, 2004, and informed EMC that wage reports should be completed and returned by August 24, 2004. Subsequently, EMC contacted Grishman on August 11, 2004, to discuss the status of the appeal, This was when EMC discovered that MDES had not notified Grishman of the decision. Grishman immediately contacted MDES to advise it of this omission. Grishman then followed up with a letter detailing the issue and requesting an appeal. On November 30, 2004, MDES conducted a telephonic hearing to determine whether EMC had good cause for not filing a timely appeal. On December 7, 2004, the MDES referee issued a decision finding that EMC’s appeal of the July 21, 2004, decision was untimely.
 
 [2]
 

 
 *149
 
 ¶ 6. On December 6, 2004, EMC received two Employer’s Quarterly Wage Reports for the periods ending June 30, 2004, and September 30, 2004, based on the new classification of its workers. On December 9, 2004, EMC filed the first of four written requests for hearing, as authorized by Mississippi Code Annotated section 71-5-365 (Rev.2000), to contest EMC’s tax liability. Eventually, in a letter dated February 23, 2005, MDES scheduled a hearing for March 16, 2005, regarding the tax assessments.
 
 [3]
 
 Over strong objection by EMC, the referee limited the scope of the hearing to the assessment issue, stating that he lacked jurisdiction to hear the employee/independent contractor issue. Furthermore, the referee advised EMC that the issue of the classification of demonstrators was currently being addressed in a pending appeal before the Board of Review to determine whether EMC had filed a timely appeal. However, the referee was unaware of the current status of that appeal. EMC had not been notified of the pending appeal prior to this point; therefore, it moved to adjourn the hearing until the timeliness issue could be resolved. The referee denied EMC’s request. EMC continued to object stating that MDES had violated EMC’s right to due process as MDES had failed to respond to EMC’s requests for information and to adhere to the administrative procedure set forth in section 71-5-365. In its defense of the wage assessments, EMC also attempted to present evidence regarding the workers’ classifications, but the referee said he could only forward such information to the Board of Review. Pursuant to the statements made at the March 16th hearing, EMC wrote a letter on March 17, 2005, to the Board of Review requesting that it be allowed to present its evidence as to why it should be entitled to appeal the classification of demonstrators. This was followed by three subsequent letters reiterating EMC’s position; however, MDES did not respond.
 

 ¶ 7. The Board of Review issued a decision on May 20, 2005, which affirmed the December 7, 2004, decision denying EMC a hearing due to its untimely appeal. The May 20, 2005, decision notified EMC that it had thirty days to appeal the decision to circuit court; however, the decision did not address the wage-assessment issue. On June 9, 2005, EMC filed a “Complaint and Appeal of Decision by Mississippi Department of Employment Security” with the Hinds County Circuit Court. After reviewing the complaint, Albert White, the attorney for MDES, realized that the May 20, 2005, decision did not address the Quarterly-Wage-Assessment issue. Consequently, on July 18, 2005, the Board of Review issued a letter amending its May 20, 2005, decision, which, along with affirming the denial of EMC’s appeal based on untimeliness, also affirmed the referee’s decision that EMC had failed to provide sufficient evidence that the Quarterly Wage Assessments were incorrect.
 

 ¶ 8. On June 26, 2007, the circuit court affirmed the December 7, 2004, decision
 
 *150
 
 by MDES, stating that the notice sent to EMC was sufficient; therefore, EMC’s appeal was filed untimely. Based on this holding, the circuit court declined to address the issue of whether the demonstrators were employees or independent contractors. MDES claims that, as the appeal as to Chatham’s determination of eligibility was filed untimely, EMC should not be allowed to challenge the legal classification of the workers in question. Although EMC has fully briefed this Court on the issue of whether demonstrators are employees or independent contractors, we find, as did the circuit court, that we must first address the issue of the timeliness of EMC’s appeal.
 

 STANDARD OF REVIEW
 

 ¶ 9. Our review of an administrative appeal is well established. In the absence of fraud and if supported by substantial evidence, “an order from the Board of Review of the [MDES] on the facts is conclusive in the lower court[.]”
 
 Miss. Employment Sec. Comm’n v. PDN, Inc.,
 
 586 So.2d 838, 840 (Miss.1991). We will not disturb the decision of an administrative agency “on appeal unless it 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one’s constitutional rights.’ ”
 
 Pub. Employees’ Ret. Sys. v. Dozier,
 
 995 So.2d 136, 138(¶ 7) (Miss.Ct.App.2008) (citation omitted). “A rebuttable presumption exists in favor of the administrative agency’s decision and findings, and the challenging party has the burden of proving otherwise.”
 
 Cummings v. Miss. Dep’t of Employment Sec.,
 
 980 So.2d 340, 344(¶ 13) (Miss.Ct.App.2008). However, “[i]f an agency’s decision is not based on substantial evidence, it will be deemed arbitrary and capricious.”
 
 Case v. Pub. Employees’Ret. Sys.,
 
 973 So.2d 301, 310(¶ 20) (Miss.Ct.App.2008) (citing
 
 Pub. Employees’ Ret. Sys. v. Allen,
 
 834 So.2d 50, 53(¶ 10) (Miss.Ct.App.2002)). “[E]mployment security contribution assessments are an excise tax and, therefore, every doubt as to their application must be resolved in favor of the taxpayer and against the taxing power.”
 
 PDN, Inc.,
 
 586 So.2d at 840.
 

 I. Whether MDES’s failure to provide adequate notice to EMC’s attorney denied EMC due process or provided “good cause” for the untimely appeal.
 

 ¶ 10. We find no precedent directly interpreting the ten-day time limit for filing a notice of appeal under the pertinent statute, Mississippi Code Annotated section 71-5-355 (Supp.2008). However, MDES submits that cases where the Mississippi Supreme Court has applied the fourteen-day deadline for appealing unemployment benefit cases are instructive. We agree. In
 
 Wilkerson v. Mississippi Employment Security Commission,
 
 630 So.2d 1000, 1002 (Miss.1994), the Mississippi Supreme Court determined that an appeal which was filed one day late was untimely filed. The supreme court strictly construed the fourteen-day time period for filing a notice of appeal, holding that the statutory time limit for appeal under section 71-5-517 of the Mississippi Code of 1972 Annotated cannot be extended “absent a showing of some event not caused by a party affecting that party’s substantial rights.”
 
 Id.
 
 at 1001. Likewise, in
 
 Mississippi Employment Security Commission v. Edwards,
 
 763 So.2d 194, 196(¶ 6) (Miss.Ct.App.2000), this Court stated that:
 

 If the notice of a referee’s determination is mailed to a party’s last known address, notice of appeal within fourteen days of the mailing date is a necessary prerequisite to obtaining further review of a determination of eligibility. Bar
 
 *151
 
 ring some circumstance constituting “good cause” for failing to file a notice seeking further review, the matter ends with the expiration of the fourteen[-]day appeal period if an appeal notice is not filed.
 

 (Internal citations omitted) (denial of unemployment benefits case).
 

 ¶ 11. In
 
 Booth v. Mississippi Employment Security Commission,
 
 588 So.2d 422 (Miss.1991), the Mississippi Supreme Court addressed a factual scenario similar to the one before the Court. Booth, who was represented at his initial benefits hearing by his attorney, received written notice of an appeal regarding an MDES decision awarding him benefits.
 
 Id.
 
 at 426. However, Booth’s attorney did not receive the notice. Booth claimed that the failure to notify his attorney of record violated his minimum due process requirements.
 
 Id.
 
 The supreme court noted that although Rule 5(b) of the Mississippi Rules of Civil Procedure requires that an attorney representing a party receive service unless otherwise ordered by the court, “the Rules of Civil Procedure are inapplicable to administrative proceedings.”
 
 Id.
 
 at 427 (citation omitted). Minimum due process will be found where notice is “reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”
 
 Id.
 
 As Booth admitted that he had received timely notification of the appeal, the court found that the notice given to Booth satisfied the minimum due process requirement.
 
 [4]
 

 ¶ 12. However, the
 
 Booth
 
 court concluded by “strongly recommending]” that MDES “re-evaluate its rules regarding notice and process.”
 
 Id.
 
 at 428. EMC argues that MDES’s failure to provide notice to its attorney of record, years after the supreme court’s recommendation in
 
 Booth
 
 that MDES re-evaluate its rules, violated EMC’s right to due process and/or constituted “good cause” for EMC’s failure to file a timely appeal.
 

 ¶ 18. MDES admitted that it was not uncommon to notify attorneys of decisions; however, this is usually done in cases where the attorney submits a written request for notification. MDES argued that, due to the number and variety of matters with which the department deals, it would be impractical to send every determination to persons or entities claiming to be a representative of an employer without specific instructions. MDES never received any such written notice from Grishman.
 

 ¶ 14. Even though MDES failed to follow the supreme court’s recommendation, EMC has failed to cite any authority that would permit this Court to disregard
 
 Booth.
 
 While the supreme court did leave open the possibility that it might revisit this issue of the constitutionality of notice provided by MDES, we are bound by
 
 Booth’s
 
 holding that notice to the party is sufficient to satisfy due process requirements in administrative matters and that notice to counsel is not constitutionally required. Accordingly, we affirm the circuit court’s decision that EMC was not denied due process by MDES’s failure to notify EMC’s attorney of the July 21, 2004, decision.
 

 ¶ 15. EMC next argues that MDES’s failure to notify Grishman of its decision resulted in EMC’s untimely appeal and should warrant “good cause” to
 
 *152
 
 allow an out-of-time appeal. In
 
 Mississippi Department of Employment Security v. Good Samaritan Personnel Services, Inc.,
 
 996 So.2d 809, 813(¶ 10) (Miss.Ct.App.2008), this Court stated that under the MDES appeals statutes, the time period for filing a notice of appeal “may be relaxed or extended if there is a showing of ‘good cause’ by the appellant that the mailing to the last known address was not ‘reasonably calculated, under all the circumstances, to apprise’ the party of the decision.” (Citations omitted) (denial of unemployment benefits case). “Good cause is established when there is sufficient evidence to show that a party failed to receive the mailing due to delays in the mail or because of an act beyond the party’s control.”
 
 Id.
 
 at 813-14(¶ 12) (quoting
 
 Miss. Employment Sec. Comm’n v. Marion County Sheriffs Dep’t,
 
 865 So.2d 1153, 1157(¶ 10));
 
 see also Cane v. Miss. Employment Sec. Comm’n,
 
 368 So.2d 1263, 1264 (Miss.1979) (erroneously mailing the notice of the decision to the claimant’s previous address constitutes good cause) (denial of unemployment benefits case).
 

 ¶ 16. In the present case, MDES sent notice of the July 21, 2004, decision to EMC’s correct address. As the circuit court judge noted in her order, all preceding correspondence from MDES to EMC had been responded to in a timely fashion. Further, the notice contained no indication that EMC’s counsel was being provided a copy so as to mislead EMC in any way. Consequently, as EMC admits that it received timely notice of the July 21, 2004, decision, we affirm the circuit court’s determination that good cause was not shown for EMC’s failure to file a timely notice of appeal. This issue is without merit.
 

 II. Whether EMC was required to remit quarterly wage assessments for June 30, 2004, and September 30, 2004.
 

 ¶ 17. As to the wage assessment issue, EMC repeatedly petitioned MDES to request a hearing concerning its June 30, 2004, and September 30, 2004, Quarterly Wage Assessments. A hearing regarding the assessments was held on March 16, 2005. However, the sole argument presented by EMC at the hearing was that the assessments were improperly based on the classification of the workers as employees, which the referee did not have jurisdiction to address based on the December 7, 2004, ruling. Sandra Watson, the Vice-President of Operations for EMC, testified that, other than her opinion that the demonstrators were not employees, she could not offer any proof that the assessments were incorrect.
 
 [5]
 
 Watson also acknowledged that she had the ability to determine the amounts paid to the demonstrators. However, she stated that she had not done so as EMC’s records were not kept on a quarterly basis and that it would be time consuming to do so. EMC has never challenged any aspect of the assessment other than the fact that the demonstrators were classified as employees rather than independent contractors, which was not timely appealed. Therefore, we find no error in the imposition of June 30, 2004, and September 30, 2004, Quarterly Wage Assessments. This issue is without merit.
 

 
 *153
 
 III. Whether
 
 Product
 
 Connections
 
 [6]
 
 bars MDES from re-litigating the classification of product demonstrators.
 

 ¶ 18. EMC contends that this Court should reverse the decisions by MDES and the circuit court and find that MDES should have been barred by the doctrines of res judicata and collateral estoppel from re-litigating the issue of the classification of EMC’s product demonstrators based on both the February 1996 decision by the Board of Review, which was discussed previously, and the recent decision by this Court in
 
 Mississippi Department of Employment Security v. Product Connections, LLC.,
 
 963 So.2d 1185 (Miss.Ct.App. 2007). In
 
 Product Connections,
 
 the same claimant, Chatham, applied for unemployment benefits pursuant to work performed for another company, Product Connections, LLC (PC).
 
 Id.
 
 at 1186(¶ 1). Factually, this case is almost identical to the one before us here. Chatham worked for PC as a demonstrator. As in the present case, MDES found that Chatham was an employee, not an independent contractor. However, on appeal, the circuit court reversed the ruling of MDES, finding that Chatham was an independent contractor.
 
 Id.
 
 This Court affirmed the circuit court’s ruling finding that the hearing officer misstated the relationship between PC and Chatham and that there was no substantial evidence to support MDES’s decision.
 
 Id.
 
 at 1189 (¶¶ 11-12).
 

 ¶ 19. As we have found EMC’s appeal of the July 21, 2004, decision to be untimely filed, the issue of whether EMC’s demonstration workers are independent contractors or employees is not properly before this Court. We recognize, however, that as a result of this case, Chatham will be considered an employee of EMC, yet as a result of
 
 Product Connections,
 
 she will be considered an independent contractor of PC for doing basically identical work. While EMC argues that this result is “absurd” and “unfair,” we find that the disparity is caused by EMC’s failure to file a timely appeal, not any error or unfairness in the law. Counsel for MDES stated at oral argument, however, that based upon the untimely appeal, MDES intends to continue to treat all of EMC’s demonstrators, not just Chatham, as employees, rather than as independent contractors, yet will treat demonstrators of all other companies as independent contractors in accordance with our ruling in
 
 Product Connections.
 
 Counsel admitted that this “could have the appearance of an unfair result” and advised that MDES would look to this Court’s decision in this case to “instruct” it on this matter as to the future classification of such workers. This Court, however, has “no power to issue advisory opinions.”
 
 Evans v. Moore,
 
 853 So.2d 850, 855(¶ 24) (Miss.Ct.App.2003) (citation omitted). We cannot, therefore, advise or instruct MDES as to the applicability of the
 
 Product Connections
 
 decision to EMC’s demonstrators, other than Chatham. The question as to what point in time MDES is required to revisit its treatment of EMC’s demonstrators based on the ruling in
 
 Product Connections
 
 is not before us. We would, however, trust that in light of MDES’s perception of “the appearance of an unfair result,” MDES would closely scrutinize any authority it believes justifies or requires any continuing inequality of treatment.
 

 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS
 
 *154
 
 APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The letter was mailed to Russell Hollrah, an attorney located in Washington, D.C., who was apparently representing EMC in that matter.
 

 [2]
 

 . MDES argues that it never received any request to mail notices of its decisions to Grishman, although it admitted at oral argument that it lias made an effort to send notice to attorneys on a customary basis. At the telephonic hearing, the referee asked Grish-man whether there was any communication given to MDES asking that notifications be sent to him. Grishman said that he had no written documentation to that effect.
 

 [3]
 

 . Although EMC vehemently argues that MDES was statutorily obligated to schedule a hearing on the issue within fifteen days of such request, we find this a misstatement of the applicable law. Mississippi Code Annotated section 71-5-365 states: “Upon receipt of such petition
 
 within the fifteen days allowed,
 
 the commission shall fix the time and place for a hearing and shall notify petitioner thereof.” (Emphasis added). The correct reading of the statute is that if the
 
 petition for rehearing
 
 is submitted within fifteen days of MDES's assessment of the amount of contributions, then MDES shall fix a time and place for hearing. There is no statutory time limitation on when MDES shall schedule such hearing. In addition, MDES explained in its reply to EMC that the agency had undergone an extensive reorganization during that period, which contributed to the delay.
 

 [4]
 

 . The supreme court stated that: "[T]his Court
 
 at this time
 
 does not hold that diere is a constitutional requirement for notice to the attorney for the claimant as long as notice to the claimant is ‘reasonably calculated' to apprise the claimant of necessary information.”
 
 Booth,
 
 588 So.2d. at 428 (emphasis added).
 

 [5]
 

 . As no employee-wage information was available from EMC, MDES consulted the North American Code Classification for the local-wage information for that class of worker. That amount was then multiplied by the highest number of workers for the given quarter. Using this formula, MDES assessed that the total taxable wages for each quarter at issue was $11,907 (plus interest and penalties).
 

 [6]
 

 .
 
 Miss. Dep't. of Employment Sec. v. Product Connections, LLC.,
 
 963 So.2d 1185 (Miss.Ct.App.2007).