# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CC-01201-COA

**JACKSON-GEORGE REGIONAL LIBRARY SYSTEM**                    **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/11/2016 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STACIE ELIZABETH ZORN |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE |
| | ANNA CRAIN CLEMMER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 09/12/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Johnell Fowler was terminated by the Jackson-George Regional Library System (JGRLS) after posting a compromising photo of a library patron in violation of JGRLS's confidentiality policy.  Fowler's claim for unemployment benefits was initially denied by the claims examiner on the basis of employee misconduct.  On appeal before an administrative law judge (ALJ), however, the claim examiner's findings were reversed, and benefits were awarded.  JGRLS appealed the ALJ's decision to the Mississippi Department of Employment Security's (MDES) Board of Review (the Board), which adopted and affirmed the ALJ's findings and conclusions.  Aggrieved, JGRLS then appealed to the Jackson County Circuit

Court, which affirmed the Board's decision. JGRLS now seeks relief from this Court. We reverse and render.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. Fowler was employed as a clerk by the St. Martin Library, a branch of the JGRLS, for roughly seven years and five months. Fowler was terminated on September 22, 2014, and filed for unemployment benefits on September 30, 2014.

¶3. At the time of Fowler's termination, Fowler was on a six-month probationary period implemented in June 2014. Fowler's notice of probation stated that if any further disciplinary incidents or insubordination occurred while she was on probation, Fowler would be subject to immediate disciplinary action including, but not limited to, suspension without pay or termination. The infractions leading to Fowler's probation, however, were excluded from the ALJ's scope of investigation because, according to JGRLS, Fowler's final incident was allegedly enough to warrant immediate termination.

¶4. Sometime after the initiation of her probationary period, Fowler posted a compromising photograph of a St. Martin library patron on Facebook. The photo depicted the patron sitting at a library computer with her underwear exposed, which Fowler captioned as "St. Martin's finest." Lori Barnes, director of the JGRLS, became aware of Fowler's photo, and on September 22, 2014, issued to Fowler a letter of termination. Pursuant to her role as JGRLS's director, Barnes possessed the sole authority to terminate JGRLS employees for cause. Barnes stated in Fowler's termination letter that Fowler's posting of the photo violated JGRLS's "confidentiality policy," which, in its entirety, read: "Maintain strict

2

confidentiality of all customer information. Never discuss customers with other employees in public areas." The confidentiality policy, however, did not articulate the punishment for a violation thereof. Barnes, in her letter, wrote that she could not fathom a more textbook violation of the policy, and thus, terminated Fowler immediately.

¶5. As a result, Fowler filed for unemployment benefits on September 30, 2014, which a claims examiner initially denied on the basis that Fowler was found to have violated JGRLS's confidentiality policy. Fowler appealed to an ALJ. The ALJ conducted a telephonic hearing on December 5, 2014, wherein Fowler and Barnes testified as to Fowler's termination, among other things. In light of the testimony presented at the hearing, the ALJ reversed the findings of the claim examiner, and awarded Fowler benefits. The ALJ made clear the "decision [was] rendered on a credibility basis," and that the best-available evidence revealed JGRLS's confidentiality policy was not uniformly applied.

¶6. Aggrieved, JGRLS appealed to the Board. The Board affirmed the ALJ, thereby adopting the ALJ's findings and conclusions. JGRLS then appealed to the Jackson County Circuit Court. The circuit court affirmed the Board, which affirmed the ALJ's finding that substantial evidence existed supporting the conclusion that JGRLS did not uniformly enforce its rules and policies. JGRLS now appeals to this Court, arguing that the Board's ruling was not supported by substantial evidence, and therefore, was arbitrary and capricious.

## STANDARD OF REVIEW

¶7. "Our review of an administrative appeal is well established. In the absence of fraud and if supported by substantial evidence, an order from the Board of Review of the MDES

3

on the facts is conclusive in the lower court." *EMC Enter. Inc. v. Miss. Dep't of Emp't Sec.*, 11 So. 3d 146, 150 (¶9) (Miss. Ct. App. 2009) (internal quotations omitted). This Court will not disturb an administrative agency's decision "on appeal unless it '1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights.'" *Id.* (citing *Pub. Emps' Ret. Sys. v. Dozier*, 995 So. 2d 136, 138 (¶7) (Miss. Ct. App. 2008)).

¶8. "A rebuttable presumption exists in favor of the administrative agency's decision and findings, and the challenging party has the burden of proving otherwise." *Id.* (citing *Cummings v. Miss. Dep't of Emp't Sec.*, 980 So. 2d 340, 344 (¶13) (Miss. Ct. App. 2008)). "[I]f an agency's decision is not based on substantial evidence, [however,] it will be deemed arbitrary and capricious." *Id.* (quoting *Case v. Pub. Emps' Ret. Sys.*, 973 So. 2d 301, 310 (¶20) (Miss. Ct. App. 2008)).

## DISCUSSION

### I. Misconduct Defined

¶9. "A person is disqualified from receiving unemployment benefits if '[she] was discharged for misconduct connected with [her] work, if so found by [MDES].'" *Kidd v. Miss. Dep't of Emp't Sec.*, 202 So. 3d 1283, 1285 (¶6) (Miss. Ct. App. 2016); *see also* Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev. 2012). The Mississippi Supreme Court addressed the definition of "misconduct" in *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982). There, the supreme court defined "misconduct" as:

> [C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of

4

behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents and good faith errors in judgment or discretion [are] not considered "misconduct."

*Id.* (citation omitted).

¶10. Additionally, MDES Regulation 308.00 (Miss. Admin. Code § 20-1-101:308.00) states, in pertinent part:

For purposes of Mississippi Code Section 71-5-513, misconduct shall be defined as including but not limited to:

1. The failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed;

*a. An individual shall be found guilty of employee misconduct for the violation of an employer rule only under the following conditions:*

*i. the employee knew or should have known of the rule;*

*ii. the rule was lawful and reasonably related to the job environment and performance; and*

*iii[.] the rule is fairly and consistently enforced.*

(Emphasis added). "The employer bears the burden of proving misconduct by substantial, clear, and convincing evidence." *Kidd*, 202 So. 3d at 1285 (¶6); *accord* Miss. Code Ann. § 71-5-513(A)(1)(c).

## II. The Board's Decision Was Not Supported by Substantial Evidence

¶11.    As the circuit court highlighted in its order, the issue before the Board was whether there was substantial evidence to support the finding that Fowler's actions did not constitute employee misconduct because JGRLS did not uniformly apply its confidentiality policy. On appeal to this Court, JGRLS alleges there was *no* evidence upon which the Board could support its decision. Reviewing the record, we likewise cannot say that the Board's decision was supported by substantial evidence.

¶12.    "Substantial evidence . . . means something more than a mere scintilla of evidence, and that it does not rise to the level of a preponderance of the evidence." *Smith v. Tippah Elec. Power Ass'n*, 138 So. 3d 900, 903 (¶12) (Miss. 2014) (internal quotations omitted). "It may be said that it means such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Id.* "Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* Here, JGRLS's principal argument is that Fowler's testimony related to the ultimate issue was not based upon personal knowledge—therefore, it could not rise to the level of substantial evidence. We agree.

¶13.    During the hearing before the ALJ, Barnes testified that, though Fowler was on probation for prior, unrelated infractions, her posting of the photo was grounds for immediate termination. Because of this testimony, Fowler's prior infractions that lead to her probation were deemed irrelevant, and excluded from the ALJ's scope of investigation. Barnes further testified that through her role as JGRLS's director, she had personal knowledge of other employees' disciplinary records. She reiterated as well that JGRLS's rules and regulations

were uniformly and consistently enforced, that past employees had been subject to immediate termination for confidentiality-policy violations, and that were other employees to post similar photos, they would have faced similar penalties. Fowler, on the other hand, testified to the contrary.

¶14. Fowler began by stating that the Facebook photo she posted was of a patron, likely taken in 2013, which remained on her phone for years; prior to her posting the photo, it had never been shared with anyone else. Fowler went on to testify that she posted the photo after other JGRLS employees began posting photos of a similar nature. Fowler stated that she was aware of JGRLS's policies, but at the time she posted the photo, did not believe her photo violated any JGRLS rules as neither the patron's name nor face was displayed in the photo. She likewise stated that, in hindsight, she realized the posting was the wrong thing to do, but in light of that above, she did not realize at the time that her actions would violate JGRLS's confidentiality policy.

¶15. Fowler also stated that, to her knowledge, of the other employees who posted similar Facebook photos, none were disciplined. Though she admitted that she did not divulge the names of those fellow employees to Barnes, nor possessed *actual, personal knowledge of others' disciplinary records*, Fowler testified that she would have known if others were reprimanded because JGRLS employees "talk to each other."

¶16. Following the hearing, the ALJ stated in his opinion:

> The best available evidence indicates that those rules were not uniformly enforced against all the employees. Violation of a rule that is not uniformly enforced does not constitute misconduct as defined by Mississippi state law.

7

> This decision is rendered on a credibility basis. The testimony of [Fowler and Barnes] carried as to the enforcement of the rules. [Fowler's] testimony on that issue was cohesive and convincing.
>
> While [Fowler's] actions may constitute sufficient reason to discharge an at-will employee, they were not proven to constitute misconduct and thus do not disqualify the claimant from receiving unemployment insurance benefits.

Thus, the ALJ found that JGRLS did not meet its burden of proving misconduct by substantial, clear, and convincing evidence. *See Kidd*, 202 So. 3d at 1285 (¶6); *accord* Miss. Code Ann. § 71-5-513(A)(1)(c); *see also* Miss. Admin. Code § 20-1-101:308.00.

¶17. It was further found that Fowler's testimony was consistent, reliable, and credible. JGRLS, however, contends that because Fowler's testimony was uncorroborated hearsay not based upon any personal knowledge, it cannot rise to the level of substantial evidence, and thus, the Board's adoption of the ALJ's findings was arbitrary and capricious. We agree.

¶18. We find such even in light of the fact that "the [R]ules of [E]vidence are relaxed in administrative settings[.]" *SkyHawke Tech. LLC v. Miss. Dep't of Emp't Sec.*, 110 So. 3d 327, 330 (¶9) (Miss. Ct. App. 2012). We also acknowledge that the circuit court relied heavily on *McClinton v. Mississippi Department of Employment Security*, 949 So. 2d 805 (Miss. Ct. App. 2006), in which this Court held that "if hearsay, even if not corroborated in the traditional sense, is highly probative because it has strong indicia of reliability, it can at least in many situations be substantial evidence." *Id.* at 814 (¶29). Likewise, MDES asserts the same here. Upon review of the record, however, we cannot say that this is one of the many situations the *McClinton* court anticipated.

¶19. This is because Mississippi Rule of Evidence 602 states "[a] witness may testify to

a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." M.R.E. 602. Thus, "*[a] person must have personal knowledge of the matter as opposed to a mere opinion, in order to testify.*" M.R.E. 602 advisory committee's note to 2016 amendment (emphasis added). And though evidence "introduced to sufficiently prove the witness's personal knowledge" permits "the witness [to] testify to that matter," we find such is not the case here. *Robinson v. State*, 940 So. 2d 235, 238 (¶9) (Miss. 2006).

¶20. To begin, Fowler admitted that she lacked any personal knowledge as to other employees' disciplinary records. From an evidentiary standpoint alone, that is enough to bar her testimony as to the uniform enforcement of JGRLS's rules and regulations. *See* M.R.E. 602. Going further, however, we cannot say that Fowler's assertions of personal knowledge due to employee correspondence was enough to "supply the necessary foundation showing that [she] ha[d] personal knowledge." *See* M.R.E. 602 advisory committee's note to 2016 amendment. JGRLS employs over ninety employees across eight different branches. Yet Fowler failed to report any of the other employees allegedly engaged in similar conduct, and did not provide any statements by them to her that would have given her personal knowledge that they had not been disciplined. Thus, having laid no foundation, and possessing no personal knowledge as to the ultimate issue of uniform enforcement, we find Fowler's testimony cannot constitute substantial evidence—as such, the Board's decision cannot stand.

## CONCLUSION

¶21. In sum, we recognize both the highly deferential standard of review accorded the

9

Board's findings and the rebuttable presumption in favor of its decision. *EMC*, 11 So. 3d at 150 (¶9) (citing *Cummings*, 980 So. 2d at 344 (¶13)). Nevertheless, because we find the Board's decision was not supported by substantial evidence, it necessarily follows that the decision was also arbitrary and capricious. *See id*. Therefore, we reverse and render the judgment of the circuit court, and reinstate the ruling of the claims examiner denying benefits to Fowler.

¶22.   **REVERSED AND RENDERED.**

　　　**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**