# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01676-SCT

*LORENZO ROBINSON a/k/a TYMOOCHIE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/03/2005 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALLAN D. SHACKELFORD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED -10/19/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case comes to this Court on appeal from the Circuit Court of Coahoma County, by Lorenzo Robinson.   Robinson seeks review of the trial court's decision allowing testimony by witness Norman Starks concerning Robinson's alleged gang connection and the admission of a prior inconsistent statement by witness Tiffany Marion, also concerning Robinson's alleged connection to gang activity.   Further, Robinson seeks review of the trial court's denial of his motion for judgment not withstanding the verdict or in the alternative a new trial, asserting the verdict was against the overwhelming weight of the evidence.   We hold that the

circuit court did not abuse its discretion in denying Robinson's motion for J.N.O.V. or a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2.     This appeal arises from two separate shootings of the victim Andrew Hampton. Robinson was indicted for aggravated assault of Hampton on June 3, 2003 following the initial shooting of Hampton which occurred on October 2, 2002.  This case was set to go to trial on July 28, 2003.   However, on July 19, 2003, Hampton was shot and killed on Garfield Street in Clarksdale.  On November 30, 2004, Robinson was indicted by a grand jury for aggravated assault and two counts of conspiracy to commit murder. Robinson was subsequently tried for aggravated assault and conspiracy to commit the murder of Hampton and witness  Peppie Deon Wright.

¶3.     At trial, Wright testified that he saw defendant Robinson shoot Hampton in the buttocks in the first shooting incident.  It was stipulated for the record that a bullet was removed from Hampton's buttocks during the autopsy.   Witness Michael Ingram testified that he was a member of the "Mafia Insane Vice Lord Gang" (hereinafter referred to as "the Mafia gang") along with  Robinson, Kenyon Evans and George Johnson.  Ingram testified that he witnessed a conversation in which Robinson told Evans he was going to pay Hampton $5,000 to avoid being tried for aggravated assault on July 18, 2003.  Ingram testified that Evans said "I'll take care of that," to which Robinson responded "all right."  Ingram further testified that he agreed to ride with Evans and Johnson, after some protest,  to the crime scene where  Hampton was murdered in the second shooting.   Ingram testified that he was behind a building at the crime scene when he heard about thirteen shots.   When he saw Hampton lying on the street, he ran

2

home without returning to the car with the other members. He further testified that Robinson called him shortly after the shooting and told him "don't run your mouth." Evans also admitted that he was a member of the Mafia gang along with Robinson and Ingram. Although he testified that Robinson had not been in the Mafia gang for approximately the past four years. Evans also testified that he shot and killed Hampton and plead guilty to Hampton's murder and conspiracy to commit murder.

¶4.	Sergeant Norman Starks, an investigator with the Clarksdale Police Department, testified about his investigation of the initial shooting (aggravated assault) of Hampton. He testified to interviewing Robinson, Evans and Johnson, as well as others associated with the incident. Based on these interviews and other evidence, he believed all men were members of the Mafia gang, which had been in existence in Clarksdale for approximately eight years. Starks testified that in addition to the information gained through interviewing these men and others in the local community who knew them, he had observed the similar dress and manner in which these men hung out together. He testified that the Mafia gang had specific tattoos, distinctive dress and hung out together in a certain area of town referred to as "Forty-Seven Beat".

¶5.	Witness Tiffany Marion, who was at the crime scene when Hampton was murdered, testified that Robinson contacted her after the murder and told her to tell investigators that he did not have anything to do with the shooting. At trial, Marion testified that she had no knowledge of whether Johnson, Evans and Robinson were in a gang. However, the State questioned her about a previous statement in which she said "the word on the street" was that these men were all members of the Mafia gang. She then testified, over defense's objection,

3

that she previously stated that these men were involved in gang activity. Defense counsel objected and requested a limiting instruction that the statement be considered for impeachment purposes only, which was denied.

¶6. The jury convicted Robinson of aggravated assault and conspiracy to murder Hampton. Finding Robinson had previously been convicted and sentenced to terms of one year or more in the custody of the Mississippi Department of Corrections (MDOC), the court sentenced him to two life sentences as a habitual offender pursuant to Miss. Code Ann. Section 99-19-83. Robinson's motion for judgment not withstanding the verdict or a new trial was denied, from which he appeals, presenting the following issues for review:

> I. Whether the Trial Court Committed Error in Allowing Improper Testimony Concerning Defendant's Alleged Connection to Gang Activity by State's Witness Norman Starks.
>
> II. Whether the Trial Court Committed Error in Allowing a Prior Inconsistent Statement to Be Admitted Without a Limiting Instruction When Said Statement Was Also Improper Hearsay Testimony by State's Witness Tiffany Marion.
>
> III. Whether the Trial Court Erred by Failing to Sustain the Defendant's Motion for a New Trial as the Jury's Verdict Was Against the Overwhelming Weight of the Evidence.

**ANALYSIS**

¶7. The Court has held "a trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." ***Turner v. State***, 732 So. 2d 937, 946 (Miss. 1999). The standard of review in motions for a new trial is whether the circuit court abused its discretion in failing to grant the motion. ***Dudley v. State***, 719 So. 2d 180 (Miss. 1998).

4

¶8. The first issue Robinson asserts on appeal is that certain testimony regarding Robinson's connection to gang activity was inadmissible. Robinson argues this testimony given by the State's witness, Sergeant Sparks, constituted hearsay and did not meet Mississippi Rule of Evidence 602's requirement that Sparks have "personal knowledge" of the matter. The State counters that Sergeant Sparks does indeed have personal knowledge of his testimony, in that he interviewed alleged members of the Mafia gang, as well as observed their distinctive dress, tattoos and behavior.

¶9. Under M.R.E. 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Miss. R. Evid. 602. Evidence to prove personal knowledge need not consist of the testimony of the witness himself. *Hoops v. State*, 681 So. 2d 521, 531 (Miss. 1996). As long as any evidence is introduced to sufficiently prove the witness's personal knowledge, the witness may testify to that matter. *Id.* In *Hoops,* the Court found that "personal knowledge" could include evidence used as a basis for inferring gang affiliation. *Id.* at 532. There, a witness testified that at the time of the shooting he had known defendant Hoops for a over a month and knew that Hoops was a Blood. *Id.* at 531. The witness testified that he was familiar with some of the people who hung with the Bloods and the G's and knew that the "colors" of the Bloods was red and that the "colors" of the G's was black. *Id.* He testified that while at Hoops's house, he saw Hoops with a red bandana and scarf, which were worn to show affiliation with a particular gang. *Id.* The Court found that his testimony was manifestly sufficient to indicate that the witness had some personal knowledge of Hoops's involvement with the Bloods. *Id.* Sergeant Starks's

testimony, like the witness's testimony in *Hoops*, sufficiently met the "personal knowledge" requirement of M.R.E. 602 as he testified to knowledge he received through personal interviews with the parties involved in the shooting incident and others in the local community, as well as knowledge gained through his personal observations during his many years in law enforcement. Therefore, the trial court did not abuse its discretion in allowing this testimony.

II.

¶10. Similarly, the second issue Robinson asserts on appeal is that he was entitled to a limiting instruction with regard to the testimony of the State's witness Marion. After Marion testified she knew nothing of Robinson's involvement with a local gang, the State asked Marion whether she had previously stated that she was familiar with Robinson's gang connections. Robinson argues Marion's answer constituted a prior inconsistent statement and could be used only for impeachment purposes; however, the trial judge denied a limiting instruction for this purpose. Robinson asserts that Marion's testimony as to Robinson's gang relations constituted hearsay and that the State improperly used this testimony as substantive evidence in its closing argument when counsel for the State asked the jury, "Are you going to allow somebody, Tymoochie [Robinson] and his, and his gang members to tell Clarksdale what to do?" Relying on *Martindale v. Wilbanks*, 744 So. 2d 252, 255 (Miss. 1999), Robinson asserts that the use of Marion's prior inconsistent statement as substantive evidence in the State's closing argument was reversible error. However, the State argues that Marion's statements were not hearsay because she had knowledge of the gang activity as she was an eyewitness to the murder of which Robinson is charged with conspiring to commit. Further, the State asserts it did not use impeachment evidence as substantive evidence in its closing

6

argument. Notwithstanding, the State argues its witnesses, who were purportedly gang members, did not deny membership in the gang, therefore any errors under this issue constitute harmless error.

¶11. In *Whitehurst v. State*, 540 So. 2d 1319, 1324 (Miss. 1989), the Court found that it was harmless error for the trial court to admit the results of blood tests on the deceased. The Court stated "assuming, without deciding, that this evidence was irrelevant, and therefore, inadmissible pursuant to Mississippi Rules of Evidence 402, it is clear that error, if any, by the trial judge in admitting this evidence did not affect a substantial right of Whitehurst. M.R.E. 103(a)." *Id.* Similarly, the admission of Marion's previous statement did not affect a substantial right of Robinson to a fair trial as the record shows this statement was not the only evidence of his gang involvement. Evans and Ingram, who both admitted to being active members on the Mafia gang, testified to Robinson's affiliation with the gang. Further, the prosecution did not mention Marion's testimony in its closing argument, therefore there was no attempt by the prosecution to use impeachment evidence as substantive evidence during its closing as argued by Robinson. Therefore, even assuming this statement should have been admitted for impeachment purposes only, the trial court's error in denying the limiting instruction was harmless.

III.

¶12. Finally, Robinson asserts on appeal that the trial court erred by failing to grant his motion for a new trial because the jury's verdict was not supported by the weight of the evidence. The State argues the record presents credible and substantial eye witness testimony to support the jury's verdict. Specifically, the State argues based on testimony from Wright,

7

who testified he saw Robinson shoot the victim (aggravated assault), as well as Ingram, who testified he was present to hear Evans tell Robinson that he will "take care of that" (conspiracy to commit murder), constitutes sufficient evidence in support of the trial court's denial of Robinson's motion for a new trial.

¶13. In an appeal of a denied motion for judgment notwithstanding the verdict, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). The Court must accept as true all evidence consistent with Robinson's guilt, together with all favorable inferences that may be reasonably drawn from the evidence, and disregard the evidence favorable to the defendant. *Id., Whitehurst*, 540 So. 2d at 1327. If this evidence would support a verdict of guilty beyond reasonable doubt, the trial court's denial of the motion must be affirmed. *Id.* Further, a motion for a new trial should not be granted except to prevent "an unconscionable injustice." *Jones v. State*, 635 So. 2d 884, 887 (Miss. 1994).

¶14. The record shows that Wright testified to seeing Robinson shoot Hampton in the buttocks on October 2, 2002, in Clarksdale and identified him in court as the shooter. A bullet was removed from Hampton's buttocks during the autopsy, which supports Wright's eyewitness account. This account suffices as credible eyewitness evidence in support of Robinson's aggravated assault conviction. Ingram testified that Robinson was a member of the Mafia gang with no objection from defense counsel. Ingram's testimony described the details of a conversation on July 18, 2003, in which Robinson told Evans he was going to pay Hampton $5,000 to avoid being tried for the aggravated assault of Hampton, to which Evans responded "I'll take care of that." Ingram further testified that Robinson said "all right", which according

to him indicated approval of Evans's suggested actions. Ingram also testified that he rode to the crime scene with Evans and Johnson, where he heard approximately thirteen shots fired. Ingram further testified that after Hampton's murder, Robinson threatened him, "don't run your mouth." Marion testified as to seeing Evans shoot his weapon toward Hampton on July 19, 2003, which serves as credible eyewitness testimony to Hampton's murder and corroborates Ingram's testimony regarding the agreement between Evans and Robinson to "take care" of Robinson's upcoming trial for the assault of Hampton. Together, this testimony supports Robinson's conviction for conspiracy to murder Hampton.

¶15. As the Court stated in *McClain*, the evidence challenged by Robinson in this appeal must be accepted as true with all reasonable inferences arising therefrom. Therefore, accepting as true the evidence favorable to the verdict, we are not convinced that the verdict is outweighed by the evidence or that the denial of Robinson's motion for a new trial constitutes "an unconscionable injustice." We find the trial court did not abuse its discretion in denying Robinson's motion for judgment notwithstanding the verdict or a new trial.

**CONCLUSION**

¶16. Based on the foregoing reasons, the circuit court's judgment is affirmed.

¶17. **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE OF LIFE IMPRISONMENT SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION DURING THE TERM OF SAID SENTENCE. COUNT II: CONVICTION OF CONSPIRACY TO COMMIT MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE OF LIFE IMPRISONMENT SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION DURING THE TERM OF SAID SENTENCE. THE SENTENCE IMPOSED IN COUNT II SHALL RUN CONSECUTIVE TO ANY AND ALL**

**SENTENCES PREVIOUSLY IMPOSED BY THE FEDERAL OR STATE GOVERNMENT.**

**WALLER, P.J., DIAZ, EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., NOT PARTICIPATING.**