IRVING, J.,
 

 for the Court:
 

 ¶ 1. Jerry Moses was convicted in the Washington County Circuit Court of carjacking. He was sentenced to fifteen years in the custody of the Mississippi Department of Corrections and ordered to pay a $2,500 fíne. Aggrieved, Moses appeals and asserts (1) that the trial court erred in refusing to grant his proffered circumstantial-evidence jury instruction, (2) that there was insufficient evidence to support the verdict against him, (3) that the verdict is against the overwhelming weight of the evidence, and (4) that the trial court erred in admitting certain evidence.
 
 [1]
 

 
 *393
 
 ¶ 2. Finding no reversible error, we affirm Moses’s conviction and sentence.
 

 FACTS
 

 ¶ 8. On April 7, 2007, Verna Thomas was accosted by two men as she exited her vehicle in the parking lot of Jubilee Casino in Greenville, Mississippi. Thomas’s car keys fell to the ground during the ordeal, and one of the men picked them up and jumped into Thomas’s car. The other man followed suit, and they then fled the scene in Thomas’s car. Thomas’s vehicle was recovered in Arlington, Texas, several weeks later, containing a piece of paper and a photograph. The record is clear that neither the piece of paper nor the photograph was in Thomas’s car when it was stolen from her.
 

 ¶ 4. Thomas did not see either perpetrator’s face; however, during their investigation, officers with the Greenville Police Department learned that Corderro Kennedy was one of the men who was involved in the attack against Thomas. They also learned that Kennedy drove his mother’s white Mercury Tracer to the casino. Following the investigation, Kennedy was arrested in August 2007, and Moses turned himself in the following October. Moses went to trial in June 2008.
 

 ¶ 5. At trial, Thomas testified as to what occurred on April 7, 2007. According to Thomas, shortly after twelve o’clock p.m., she was approached by two men in the parking lot of Jubilee Casino. Thomas was not certain whether she was pushed to the ground or whether she fell, but she stated that she ended up on the ground. She stated that one of the men told her that he would kill her if she screamed. Thomas recalled that her car keys fell out of her hand, that one of the men retrieved them, and that both men got into her car and fled the scene. Thomas also recalled that one of the men had a “sack” in his hand. However, she testified that she did not know what the sack contained. According to Thomas, she then went inside the casino and sought help. There, she informed a security guard as to what had transpired.
 

 ¶ 6. Ken Trader, the security director at Jubilee Casino, testified that he viewed the surveillance footage of the parking lot for the day of the attack. Trader’s testimony made it clear that the video corroborates Thomas’s account of what transpired. Trader testified that he went to the location where the incident had occurred in an effort to find evidence that may have been left by the perpetrators, but he was unsuccessful. However, while looking for evidence, Trader noticed two vehicles in the parking lot that he considered suspicious— one of which was a white Mercury Tracer. Therefore, he called his security officer and requested that the owners of both of the vehicles be paged by the license plate numbers of the vehicles. When no one responded to the page, Trader contacted the Greenville Police Department and spoke with Investigator Robert Gibson.
 

 ¶ 7. Investigator Gibson testified that Trader requested that the Mercury be removed from the casino’s parking lot. Before removing the vehicle, Investigator Gibson ran the license plate numbers and discovered that the vehicle was registered to Thelma Miller at 338 West Reed Road in Greenville, Mississippi. He also inventoried the vehicle and found a piece of paper with a Social Security number on it. He ran the Social Security number and determined that it belonged to Moses. Investigator Gibson testified that he then went to Moses’s home to talk with Moses, but Moses was not there. Therefore, he spoke with Moses’s mother, Linda Gate-wood, who informed him that she did not know Moses’s whereabouts.
 

 
 *394
 
 ¶ 8. After leaving Gatewood’s home, Investigator Gibson went to the home of Kennedy’s parents, Keith and Thelma Miller. Investigator Gibson informed them that Kennedy was suspected of being involved in a carjacking. According to Investigator Gibson, he learned from Keith that Charlie Stevenson, a long-time friend of Kennedy and Moses, might know of Kennedy’s whereabouts. Investigator Gibson stated that he learned from Stevenson that Kennedy and Moses had come up with “a plan to make some money.” Investigator Gibson ran a National Crime Information Center System check on Kennedy and Moses and determined that Kennedy was incarcerated in Albuquerque, New Mexico.
 

 ¶ 9. Hattie Wilson, a patrol officer with the Greenville Police Department, testified that she and Investigator Gibson investigated the assault and carjacking and learned that Moses had left his mother’s house with Kennedy in Kennedy’s mother’s white Mercury Tracer on the day of the incident.
 

 ¶ 10. Further, Investigator Gibson testified that when Thomas’s vehicle was found in Arlington, Texas, it contained a couple of pieces of paper with telephone numbers and a photograph. An investigation revealed that the photograph, which had been taken many years prior to this incident, was of Moses’s mother.
 
 [2]
 

 ¶ 11. Stevenson was contacted by the police and provided a statement. He also testified on behalf of the State about a gun that he asserted was used in the attack against Thomas. The State pointed out that Stevenson’s testimony differed from his statement, as he testified that Kennedy and Moses had “access to a gun” on the day of the incident. However, he said in his statement that Kennedy and Moses in fact had a gun on April 7, 2007. Stevenson testified that he did not know where Kennedy and Moses went after they left his company on April 7, that he did not know whether they were together, and that he did not see either of them with a gun.
 

 ¶ 12. Moses made a motion for a directed verdict at the close of the State’s case, which was denied by the trial court. Moses, asserting that the State had failed to prove its case, declined to call any witnesses in his defense. Shortly thereafter, Moses was convicted of carjacking, as charged.
 

 ¶ 13. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Circumstantial-Evidence Jury Instruction
 

 ¶ 14. Moses asserts that the trial court erred in failing to grant his request for a circumstantial-evidence jury instruction. It has long been the rule in this state that “[a] circumstantial-evidence instruction is required ‘only when the prosecution can produce neither an eyewitness nor a confession/statement by the defendant.’ ”
 
 Hughes v. State,
 
 983 So.2d 270, 278 (¶ 26) (Miss.2008) (quoting
 
 Rubenstein v. State,
 
 941 So.2d 735, 785 (¶225) (Miss.2006)).
 

 ¶ 15. Here, Kennedy pleaded guilty to carjacking and provided a statement to Investigator Gibson wherein he implicated Moses as his accomplice. Thus, Kennedy was an eyewitness to the crime. However, when he took the stand after being subpoenaed by the State, he refused to implicate Moses in the crime. Instead, he testified, inter alia, that he could not remember
 
 *395
 
 the events of April 7, 2007, that he did not know Moses, that he has never possessed a shotgun, and that he did not remember driving a white vehicle to the casino that day. The State did not examine Kennedy regarding the inconsistency between his statement and his trial testimony.
 

 ¶ 16. Although Kennedy was an eyewitness to the crime, he gave no eyewitness testimony. Therefore, we find that the State failed to produce an eyewitness that negated the necessity for a circumstantial-evidence instruction. Accordingly, we find that the trial court erred in failing to grant a circumstantial-evidence instruction. Nevertheless, we find that the trial court’s error does not warrant a reversal, as the evidence against Moses, though circumstantial, is overwhelming. Moreover, as Justice Robertson noted in his concurring opinion in
 
 Montgomery v. State,
 
 515 So.2d 845, 849 (Miss.1987), the appropriate standard of proof in criminal cases should be “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Justice Robertson also observed “that the circumstantial-evidence rule and the perception upon which it is based is really much ado about nothing.”
 
 Id.
 
 at 851. We agree. It is illogical to suggest that an accused who has been found guilty beyond a reasonable doubt has not also been found guilty to the exclusion of every reasonable hypothesis consistent with innocence. It is clear that if a jury perceives a reasonable hypothesis consistent with the accused’s innocence, the jury has a reasonable doubt of the accused’s guilt and, therefore, would not convict if it were instructed that it had to find the accused guilty beyond a reasonable doubt before it could do so. Here, the jury was instructed that it could not convict Moses unless the State had proved his guilt beyond a reasonable doubt. Therefore, by its verdict, the jury attested that no hypothesis consistent with Moses’s innocence was raised by the evidence or lack thereof. Consequently, we find that the trial court’s failure to give a circumstantial-evidence instruction was harmless error.
 

 2. Sufficiency
 

 ¶ 17. It is well settled in this state that in order to succeed on a challenge to the sufficiency of the evidence, a defendant must prove that no “trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Smith v. State,
 
 925 So.2d 825, 830 (¶ 10) (Miss.2006) (quoting
 
 Brown v. State,
 
 907 So.2d 336, 339 (¶ 8) (Miss.2005)). Also, challenges to the sufficiency of the evidence are viewed in the light most favorable to the State.
 
 Id.
 
 Further, an appellate court,
 

 must accept as true all evidence consistent with [a defendant’s] guilt, together with all favorable inferences that may be reasonably drawn from the evidence, and disregard the evidence favorable to the defendant. If this evidence would support a verdict of guilty beyond reasonable doubt, the trial court’s denial of the motion must be affirmed.
 

 Robinson v. State,
 
 940 So.2d 235, 240 (¶ 13) (Miss.2006) (citations omitted). “As long as ‘reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ [then] the evidence will be deemed to have been sufficient.”
 
 Smith,
 
 925 So.2d at 830 (¶ 10) (quoting
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985)).
 

 ¶ 18. Although Moses contends that the evidence is insufficient to support his conviction, he fails to point us to any such deficiency. Mississippi Code Annotated section 97-3-117(1) (Rev.2006) provides:
 

 
 *396
 
 Whoever shall knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, or attempting to do so, or by any other means shall take a motor vehicle from another person’s immediate actual possession shall be guilty of carjacking.
 

 The record clearly indicates that two males, acting in concert, took Thomas’s vehicle by force in violation of section 97-3-117(1). Although Thomas was unable to identify her attackers, the evidence is overwhelming that those two males were Kennedy and Moses. For example, (1) Investigator Gibson testified that Kennedy implicated Moses as being present at the scene on the morning of the attack; (2) a photograph of Moses’s mother was recovered from Thomas’s vehicle after it was located in Texas, where Moses had relatives; and (3) a piece of paper with Moses’s Social Security number written on it was found in the vehicle that was left at the scene. This evidence is sufficient to support the jury’s verdict, which necessarily found that Moses was one of the perpetrators. Accordingly, this issue lacks merit.
 

 3. Overwhelming Weight
 

 ¶ 19. Moses also contends that the trial court erred in denying his motion for a new trial. A motion for a new trial challenges the weight of the evidence.
 
 Tate v. State,
 
 20 So.3d 623, 643 (¶ 52) (Miss.2009) (citing
 
 Bush v. State,
 
 895 So.2d 836, 843-14 (¶ 16) (Miss.2005)). In
 
 Ivy v. State,
 
 949 So.2d 748, 753 (¶ 21) (quoting
 
 Bush,
 
 895 So.2d at 844 (¶ 18)), the Mississippi Supreme Court held that:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 
 Herring v. State,
 
 691 So.2d 948, 957 (Miss.1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
 
 Amiker v. Drugs For Less, Inc.,
 
 796 So.2d 942, 947 [ (¶ 18) ] (Miss.2000). However, the evidence should be weighed in the light most favorable to the verdict.
 
 Herring,
 
 691 So.2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, “unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.”
 
 McQueen v. State,
 
 423 So.2d 800, 803 (Miss.1982). Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony.
 
 Id.
 
 This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves.
 
 Id.
 
 Instead, the proper remedy is to grant a new trial.
 

 For the reasons already stated, we find that allowing Moses’s conviction for carjacking to stand would not sanction an unconscionable injustice. There is no merit to this issue.
 

 A
 
 Admission of Evidence
 

 ¶ 20. Moses argues that the trial court erred in allowing Investigator Gibson to testify concerning a statement that was provided to him by Kennedy wherein Kennedy implicated Moses as being present at the scene on the morning of the carjacking. Specifically, Moses asserts that the statement was offered in violation of the Sixth Amendment’s Confrontation Clause.
 
 *397
 
 Moses also cites
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) to support his argument.
 

 ¶ 21. We note at the outset that the audiotape and transcript of Kennedy’s statement were not allowed into evidence but were merely marked for identification purposes, to which the defense did not object. Since the statement was not admitted into evidence,
 
 Crawford
 
 is not implicated. The court did allow Investigator Gibson to testify as to a portion of what Kennedy told him. However, this was because counsel for Moses opened the door during his cross-examination of Investigator Gibson. During the cross-examination, counsel for Moses repeatedly questioned Investigator Gibson as to whether he had any direct evidence of Moses’s involvement in the carjacking. The court then ruled that counsel for Moses had opened the door, and the court then allowed Investigator Gibson to state that Kennedy informed him that Moses had been with him in the parking lot of the casino “on the morning of the incident.” This issue lacks merit.
 

 ¶ 22. Finally, Moses argues that the trial court erred in allowing the State to question Stevenson regarding Moses “possessing a shotgun on the evening of April 6, 2007.” Stevenson testified that Kennedy and Moses had been at his house on the night of April 6, but that they were not there when he awoke the following morning. As noted, Stevenson also testified that Kennedy and Moses had “access to a shotgun.”
 

 ¶ 23. We find that this argument is procedurally barred, as Moses failed to object at trial.
 
 See Spires v. State,
 
 10 So.3d 477, 483 (¶ 24) (Miss.2009). Procedural bar notwithstanding, we find no merit to this issue. We fail to see how Moses suffered any prejudice as a result of Stevenson’s testimony regarding possession of the shotgun, as Moses was convicted of carjacking rather than armed carjacking. Therefore, whether Moses had a gun during the attack against Thomas did not play a role in his conviction. There is no merit to this issue.
 

 ¶ 24. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF CARJACKING AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $2,500 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE AND MAXWELL, JJ., CONCUR. BARNES AND ROBERTS, JJ., CONCUR IN RESULT ONLY.
 

 [1]
 

 . Moses actually raises seven issues; however, because several of them are interrelated, we have combined them.
 

 [2]
 

 . The record reveals that Moses has relatives who reside in Arlington, Texas.