BARNES, J., FOR THE COURT:
*830 ¶ 1. Shanki Kennedy was convicted by a Holmes County jury of aggravated assault. She was sentenced by the Holmes County Circuit Court to serve twenty years in the custody of the Mississippi Department of Corrections, with five years suspended, fifteen years to serve, and five years of postrelease supervision. On appeal, Kennedy disputes the weight and sufficiency of the evidence.[1] Finding no error, we affirm.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 2. A love triangle precipitated the criminal act at issue in this case. Shortly after Fabian Watts and Victoria Watts, the victim, were married in July 2014, Victoria learned that Fabian was having an affair with Kennedy. In September 2014, the marriage collapsed when Victoria filed domestic-violence charges against Fabian, claiming he had beaten her. Soon thereafter, Victoria left the marital home in Jackson, Mississippi, and moved back to her home in Lexington, Mississippi.
¶ 3. According to Victoria, at approximately 1 a.m. on September 17, 2014, she awoke in the bedroom of her Lexington home to her little dog's barking. She heard her front door close and saw someone peeking around the corner of her bedroom door. She then saw Kennedy approaching her bed with a four-way wrench or tire iron. Victoria knew Kennedy because Kennedy had been harassing Victoria in Jackson. Kennedy attacked Victoria with the tire iron, hitting her on the head and body. Victoria began kicking Kennedy, who then began stabbing Victoria in the legs with a knife. Victoria grabbed an open knife from a nearby table and began fighting back in self-defense, stabbing Kennedy on the arm and shoulder three times.[2] Kennedy then retreated from the bedroom.
¶ 4. In the meantime, Victoria's son, Ronald Ransom, who lived in a shed in the back of the property, heard screaming. He ran out of his room to see Kennedy running from the house, and he chased her to the end of the driveway. Kennedy ran toward an awaiting vehicle down the street, leaving a trail of blood. Photographs of the blood trail were entered into evidence. As the vehicle slowly drove away, the driver honked the horn twice. Ransom identified the vehicle as belonging to Fabian. Ransom went back inside the house to find his mother screaming and covered in blood.
¶ 5. Deputy Sheriff Corey Shields of the Holmes County Sheriff's Department was the first officer on the scene. He noticed a great deal of blood on the sidewalk outside of Victoria's home. He spoke with Ransom, who stated that Victoria was attacked by Kennedy. Deputy Shields photographed the inside and outside of Victoria's house, and determined that a struggle had taken place in Victoria's bedroom and living room. He photographed a window screen that had been taken off a window in the back of the house and was on the ground.
*831 He believed the perpetrator entered through the window.
¶ 6. Victoria was taken to the Lexington Hospital, accompanied by Ransom and Officer Shields, where injuries to Victoria's scalp and legs were treated. She received approximately seventeen staples, mostly to the fourteen-inch-long laceration to her scalp. Deputy Shields took photographs of Victoria's injuries and interviewed her. Victoria recounted to him that Kennedy had intended to kill her with the tire iron, which was never found. Also missing from her house were her Michael Kors purse and a fifty-five-inch television. The television was never found. In her initial statements to police, Victoria stated that she believed Fabian was in the house with Kennedy that night and took the purse and television; however, Fabian claimed to be at work.[3]
¶ 7. Deputy Sheriff Joshua Macko of the Holmes County Sheriff's Department also responded to the scene that evening. He was dispatched to the Lexington Hospital to interview Victoria, who told him she had been asleep when Kennedy broke into her house. Victoria said she stabbed Kennedy in the arm and shoulder in self-defense. Based on that information, a dispatcher called surrounding hospitals searching for Kennedy. She was found at a hospital in Canton being treated for her stab wounds.
¶ 8. At the hospital in Canton, Officer Macko photographed Kennedy's wounds. He also noticed that she was trying to hide a Michael Kors purse under her leg. Officer Macko could see Victoria's driver's license inside the purse. Upon searching the purse, Officer Macko discovered Victoria's Social Security card, mobile telephone, and marriage license to Fabian. Further, nurses informed Officer Macko that Kennedy had tried to get rid of the purse by taking it outside to be picked up. Officer Macko also overheard Kennedy trying to get one of the nurses to make a telephone call for her to get rid of the purse.
¶ 9. Lieutenant Juanita Mitchell of the Holmes County Sheriff's Department also investigated the case. She took photographs of the scene and collected evidence, including a white glove from Victoria's bedroom, which Victoria said belonged to Kennedy. Additionally, a photograph was taken of a window with a broken lock. Officer Mitchell also photographed the stolen purse. She testified that inside of it were Victoria's credit card, driver's license, and marriage license.
¶ 10. Later on September 17, Kennedy was taken into custody, read her Miranda[4] rights, and interviewed by investigators. Officer Mitchell was present during the interview and testified that Kennedy claimed she had gotten into a fight with Victoria at Victoria's home. In her statement, Kennedy claimed her "friend boy," Kendrick Ratliff, took her to Victoria's home. Kennedy was not invited, but she let herself into Victoria's house at 1 a.m., as the front door was cracked open, and she wanted to talk to Victoria. She admitted Fabian was her ex-boyfriend, and stated that he was at work at the federal correctional facility in Yazoo City that night. Kennedy stated that she and Victoria "had been into it" in the past, but it was a while ago; however, it did get "physical." She stated that Victoria "just attacked" her for no reason; so Kennedy "grabbed something that she had in her house" to hit her back. She stated that a "friend girl" named Moon Pie took her to the hospital in Canton after the attack. She denied taking Victoria's purse and flat-screen television.
*832 ¶ 11. Captain Sam Chambers of the Holmes County Sheriff's Department was the lead investigator in the case. He was present when Kennedy was interviewed, and testified that Kennedy admitted she was in Victoria's house the night of the stabbing, uninvited, wanting to talk to Victoria. His investigation showed Kennedy was clearly the attacker. Captain Chambers also obtained the Canton hospital security video where Kennedy entered the hospital with a purse. Kennedy did not mention to Captain Chambers an alternative story that she was attacked in Canton that evening.
¶ 12. Captain Chambers also interviewed Ransom, who said he saw Kennedy running out of his mother's house. Ransom was familiar with Kennedy and was "one-hundred percent sure" it was she. While Ransom did not see Kennedy carrying a purse or television out of his mother's house, Ransom had seen Kennedy go in and out of his mother's house more than once that night. Additionally, Ransom stated he had seen Kennedy at his mother's house with Fabian a few days earlier, harassing his mother-he claimed they slashed the tires of her vehicle and smashed its headlights.
¶ 13. Dr. Mark Smothers was the physician who treated Victoria at the hospital in Lexington. At trial he was admitted as an expert in the medical field. Dr. Smothers testified that Victoria suffered from lacerations to her scalp and both legs. He opined that Victoria's scalp injury could be considered life-threatening due to the potential for excessive bleeding and possible damage to the skull and brain. He testified that her scalp laceration was consistent with a blunt injury from a tire iron.
¶ 14. Fabian testified at trial for the defense. He maintained that Kennedy was just a close friend, and they were not having an affair. He claimed that a week before the attack, he had given Kennedy the Michael Kors purse because Kennedy had helped him clean his house; however, he was originally going to give it to Victoria for her birthday. The day before the attack, he and Kennedy had gone to the Madison County Circuit Clerk's office to inquire about getting his marriage to Victoria annulled. In preparation for the trip, Fabian stated he gave Victoria's Social Security card, driver's license, and marriage license to Kennedy, who placed the documents in the Michael Kors purse. However, Fabian was unable to get the marriage annulled.
¶ 15. Fabian testified that on the night of the attack he went home and slept until his night shift began at the federal prison. On his way to work, he dropped Kennedy off at the AutoZone store in Canton. Kennedy worked at a nearby pool hall, but she saw her friend, Ratliff, outside of the AutoZone and decided to visit. Fabian contends that Kennedy called him at work that night and said she had been "jumped" leaving work at the pool hall and was injured.
¶ 16. Ratliff testified that Fabian dropped Kennedy off at the AutoZone parking lot at around 11:15 p.m. on September 16. Kennedy got in his vehicle and visited for approximately thirty to forty-five minutes, after which she went to work at the pool hall down the street. Ratliff did not know she worked at the pool hall. He stated that Fabian and Kennedy had been dating since 2011. Later that evening, Ratliff and his brother drove by the pool hall and saw Kennedy outside with blood on her. Ratliff gave her his shirt and took her straight to the hospital in Canton. Ratliff's brother escorted Kennedy into the hospital and then departed, leaving Kennedy alone at the hospital. On cross-examination, Ratliff denied driving Kennedy to Victoria's house in Holmes County, as Kennedy had *833 claimed in her statement to investigators. He contended that Kennedy lied to police about that.
¶ 17. Kennedy testified in her own defense. She stated that Fabian gave her the Michael Kors purse on September 4 for helping clean his house. She further stated that on that same day, they went to Victoria's home in Holmes County to confront her, but they did not damage Victoria's vehicle. Kennedy corroborated Fabian's testimony about giving her Victoria's personal documents when they went to get the marriage annulled.
¶ 18. Kennedy claimed that her statement to investigators was a lie; she was just telling the officers what they wanted to hear because she was scared. She contends that she was "jumped" by Victoria while walking down the street from the pool hall in Canton around 1 a.m. Kennedy claimed that Fabian had dropped her off at the AutoZone earlier, where she spoke with Ratliff and his brother before going to the pool hall. After the attack, she ran into Ratliff, who took her to the hospital, where she was informed of Victoria's assault and the burglary of her home in Holmes County. Kennedy testified that she never pressed charges against Victoria for the attack in Canton because she was arrested instead.
¶ 19. Ultimately, the jury found Kennedy guilty of one count of aggravated assault, and acquitted her on the burglary charge. After the denial of her motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, Kennedy timely appealed.
ANALYSIS
¶ 20. Kennedy argues that the verdict was not supported by the weight and sufficiency of the evidence.
I. Weight of the Evidence
¶ 21. Kennedy claims that the trial court erred when it denied her motion for a new trial because the jury's verdict was not supported by the overwhelming weight of the evidence. She points out inconsistencies in the evidence and claims a lack of credibility of the witnesses. Thus, she claims the jury's verdict should be set aside, and the case remanded for a new trial.
¶ 22. "A motion for a new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying [the] motion." Dilworth v. State , 909 So.2d 731, 737 (¶ 20) (Miss. 2005) (citations omitted). "Only in exceptional cases in which the evidence preponderates heavily against the verdict should the trial court invade the province of the jury and grant a new trial." Id. at (¶ 21) (internal quotation marks omitted). The verdict must be "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State , 895 So.2d 836, 844 (¶ 18) (Miss. 2005). The evidence will be "weighed in the light most favorable to the verdict." Id.
¶ 23. Here, the jury was presented with conflicting accounts of what happened the night of September 17-that of Kennedy, Fabian, and Ratliff versus that of Victoria and Ransom. The evidence against Kennedy was not, as she contends, "extremely weak," just contradictory to her own version of events, which the jury did not find credible.
¶ 24. Kennedy alleges that Victoria's version of the attack was manufactured out of jealousy and revenge. She contends the physical evidence did not support Victoria's story that she was attacked by Kennedy in her bed with a tire iron. Kennedy points to alleged inconsistencies in the evidence including: Victoria's scalp injury *834 was not consistent with a blow from a tire iron; the tire iron was never found; the knife Victoria claimed Kennedy used to stab her was found in her purse and not in the house; Victoria's bed was made and did not show signs of a struggle; blood was not found on or near the bed; and Victoria's initial report to police was that Fabian was in her home during the attack.
¶ 25. Initially, Kennedy confessed to law enforcement that she broke into Victoria's home at 1 a.m., wanting to talk to her, but ended up attacking her. Even though there were inconsistencies in Victoria's testimony as to certain details, Victoria was undeniably injured by Kennedy. At trial, Kennedy became the main source of inconsistencies. She changed her story, stating her original story to investigators was a lie. Kennedy claimed Victoria stabbed her on the street in Canton. However, under this version, Victoria had to return to Holmes County, stage a crime scene in her bedroom and sidewalk, inform her son of the false story, notify police, and reiterate the false story to law enforcement, all in an impossible time frame.
¶ 26. It is always the province of the jury to determine the credibility of witness testimony. Further, "it is common for the jury to be called upon to resolve sharp and irreconcilable differences in the evidence presented for its consideration." Latiker v. State , 918 So.2d 68, 73 (¶ 12) (Miss. 2005). Moreover, "[i]t is the jury's job to balance the weight [of the evidence] and credibility of the witnesses." Id. The jury did not believe Kennedy's version of the attack, and even though Victoria's version contained some inconsistencies[5] and contradictions, we cannot say the weight of the evidence, taken in the light most favorable to the verdict, did not support the verdict. Thus, the trial court did not abuse its discretion in denying Kennedy's motion for a new trial.
II. Sufficiency of the Evidence
¶ 27. Kennedy also argues that the trial court erred in not granting her motion for a directed verdict or, alternatively, her motion for a JNOV because there was insufficient evidence to support the aggravated-assault conviction.[6]
¶ 28. Motions for a directed verdict and a JNOV challenge the sufficiency of the evidence. Bush , 895 So.2d at 843 (¶ 16). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Nolan v. State , 61 So.3d 887, 893 (¶ 24) (Miss. 2011) (quoting Bush , 895 So.2d at 843 (¶ 16) ). All credible evidence consistent with the defendant's guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence. Robinson v. State , 940 So.2d 235, 239-40 (¶ 13) (Miss. 2006) (citing McClain v. State , 625 So.2d 774, 778 (Miss. 1993) ). "[R]eversal can only occur when evidence of one or more of the elements of the charged offense is such that reasonable and fair minded jurors could only find the accused not guilty." Wilson v. State , 936 So.2d 357, 363 (¶ 16) (Miss. 2006).
¶ 29. A person is guilty of aggravated assault when he or she "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly *835 weapon or other means likely to produce death or serious bodily harm." Miss. Code Ann. § 97-3-7(2)(a)(ii) (Supp. 2016). On appeal, Kennedy argues that the State failed to prove the deadly weapon element of the offense, because neither the tire iron nor the knife used by Kennedy was recovered. We disagree.
¶ 30. Victoria told police and testified at trial that Kennedy entered her home without permission at 1 a.m. and began hitting her with a tire iron. Ransom corroborated these events, stating he heard screaming and saw Kennedy running from the house. Upon entering the house, he saw his mother injured and bleeding. Both Victoria and Ransom told Officer Shields that Kennedy had broken into their home and had beaten Victoria with a tire iron. Officer Mitchell was present during Kennedy's interview and testified that Kennedy claimed she had gotten into a fight with Victoria at Victoria's home. Captain Chambers also testified that Kennedy admitted breaking into Victoria's house, and grabbing something in the house during the fight to hit Victoria.
¶ 31. Additionally, Victoria's and Kennedy's injuries were reasonably consistent with Victoria's version of events. Dr. Smothers, Victoria's treating physician at the hospital, testified that Victoria received serious bodily injuries, and her scalp laceration was consistent with being hit with a blunt object, such as a tire iron. Victoria testified that the lacerations to her legs were sustained when Kennedy stabbed her with a knife. The knife Victoria said Kennedy used to stab her in the legs was recovered in the purse. Just because the tire iron was not found does not mean the deadly weapon element was not met. The nature of Victoria's wounds, which had to be closed with staples, indicates she was attacked with a weapon deadly enough to create serious injury to a vital portion of the body. The jury could reasonably believe the weapon used by Kennedy to cause the injury on Victoria's scalp was a tire iron.
¶ 32. Considering the evidence of aggravated assault in the light most favorable to the State, the deadly weapon element could be found beyond a reasonable doubt. The evidence presented at trial was sufficient to warrant the trial court's denial of Kennedy's motion for a directed verdict or JNOV.
¶ 33. The judgement of the circuit court is affirmed.
¶ 34. AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.

Under a motion filed with this Court, law students from the University of Mississippi School of Law Criminal Appeals Clinic were appointed as special counsel for Kennedy. Law students Adreain Reynolds and Will Pomeroy prepared Kennedy's brief under the supervision of Attorney-Professor Phillip W. Broadhead, director of the clinic.

At trial, a knife and a photograph of a knife were entered into evidence. Victoria claims the photograph of a large knife on a table with several CDs is the knife she used to stab Kennedy. She described the other knife as a pocketknife, which Kennedy used to attack her. She testified that the pocketknife was found inside her stolen purse when it was returned to her, and she did not place it in there.

Fabian was never charged with a crime.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Having reviewed the photos of the victim's bedroom, we do not find the condition of the bedding contradicted Victoria's version of the event.

Kennedy also argues that the elements of burglary of a dwelling were not proven, but since she was acquitted on that charge, we decline to address the issue.