# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01295-COA

**DAVID BRETT MIDDLETON A/K/A DAVID B. MIDDLETON A/K/A DAVID MIDDLETON**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/2016 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK KEVIN HORAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/22/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, C.J., BARNES AND CARLTON, P.JJ.

### BARNES, P.J., FOR THE COURT:

¶1.     David Brett Middleton was convicted of aggravated assault by a Coahoma County jury and sentenced to ten years in the custody of the Mississippi Department of Corrections, with five years suspended and five years of post-release supervision. On appeal, Middleton claims the trial court erred in allowing a law-enforcement officer's "duty tape" to be played to the jury because the tape contained a racial slur. Additionally, he argues his motion for a directed verdict should have been granted because there was no evidence presented that the action of driving a motor vehicle in a parking lot constituted a means likely to produce serious bodily injury. We find both issues without merit and affirm.

**STATEMENT OF FACTS**

¶2.     On the afternoon of February 11, 2015, Larry Brown, a fifty-six-year-old homeless African-American male, was struck by a GMC Sierra pickup truck driven by Middleton, a white male. The incident occurred in an empty parking lot in Clarksdale, Mississippi. The parking lot was in front of a vacant building that was previously a grocery store. Middleton, a local businessman and realtor, leased commercial space in the Executive Plaza, which was across the street. Dave Houston, who could view the parking lot from his barbershop across the street, testified that Brown had been living outside the entrance to the vacant building for at least a year. On the day of the incident, Houston was called outside while cutting hair. Cedric Betts, another barber, was outside with a customer and noticed Middleton's truck following Brown. Betts testified the truck followed Brown from the Executive Plaza into the empty parking lot. Middleton, who was driving the truck, and Brown were having an argument. Betts stated Middleton was screaming at Brown, at one point saying "I'm gone kill you, n*****." Brown, meanwhile, was cursing back at Middleton, walking away from the truck. Betts testified that Middleton then revved his truck's engine and hit Brown with his truck. Brown lay on the ground, but then got up and walked away.

¶3.     Houston also testified he observed Middleton and Brown having a "verbal disagreement." Houston then saw Brown on the ground but did not see what caused him to hit the ground. Houston ran to check on him, and Middleton came by in his truck and asked Houston if Brown was "okay." Houston then called the police to obtain medical attention

2

for Brown, but he had left the scene.

¶4.     During the incident, firefighters were training outside of the Clarksdale Fire Department, which is across the street from the parking lot.  Captain Marvin McCray testified that he heard the truck's engine revving and a "loud boom" or "thump."  He then saw Brown lying face down in front of Middleton's truck in the nearby parking lot.  Richard Trotter, another firefighter, testified he saw a man walking down the sidewalk and heard an engine revving in the empty parking lot.  He saw Middleton's truck and then heard a "loud bump" that sounded like a car accident.  When Trotter looked back again, Brown was lying face down on the ground.  Several people ran to help Brown, but he ignored them and walked down the street, talking incoherently.

¶5.     Officer Eddie Earl of the Clarksdale Police Department was first on the scene.  He activated his "duty tape"[1] and recorded his conversation with Middleton.  At the time, Middleton was not under arrest and was very cooperative, wanting to tell Officer Earl his version of the events.  The tape was played for the jury over the defense's objection.  In it, Middleton explained that he managed the Executive Plaza for his father, who owned the property.  They had had prior problems with Brown, who was homeless, being on the property and scaring tenants.  Middleton had a park bench removed from outside the plaza because Brown would loiter there and harass tenants.  Brown had also been arrested for this

---

[1] At trial, Officer Earl explained that a "duty tape" is a tape recording of the individuals he speaks with and the statements they make.

3

conduct in the past.

¶6.     On the tape, Middleton explained to Officer Earl that earlier in the day, Middleton had told Brown to leave the property, but Brown cursed at him. Middleton became angry. The men cursed back and forth at each other. Middleton apologetically admitted he called Brown a "n*****" because he was "mad as hell at that son-of-a-b****." He told Officer Earl "this has been an ongoing thing for several weeks." Middleton claimed he only intended to scare Brown with his truck, but instead he accidentally "clipped him with the [side] mirror." Brown fell down. When Middleton circled back around, Brown was gone. Because Brown got up quickly after being hit, Middleton felt Brown was not injured too badly. He added that if he really wanted to hurt Brown, he "could've run him slap over."

¶7.     Even though Officer Earl informed Middleton his oral statement was recorded, Middleton insisted on writing a statement as well, which read:

> The guy has been over here before and police called on him. I just recently took a bench from my property to try and get him to stop hanging out over here. Today he was in [the] lot by [the] garbage can. I told him [to] leave [and] he started cussing me etc. I cussed him back – said words I shouldn't have. He was standing in [the] lot [and I] took out to leave past him [and] hoped to scare him. My side view mirror hit him. He fell but got back up and left.

The statement was admitted into evidence over the defense's objection.

¶8.     At trial, Middleton testified in his own defense. On February 11, he saw Brown rummaging through the garbage dumpster of the Executive Plaza parking lot. Middleton's father requested him to ask Brown to leave because of the problems in the past. Middleton

4

walked outside, asked Brown to leave, and warned Brown he would call the police. Middleton then returned to his office. Later, as he was leaving his office to attend an appraisal, Middleton saw Brown beside the building on the sidewalk. Middleton rolled down the window to his truck and yelled at Brown to leave. In response, Brown started cussing and threatening Middleton. Unsure what to do, Middleton decided to follow Brown in his truck, trying to "push him away." Brown crossed the street and walked to the old grocery-store parking lot. Middleton parked his vehicle to "calm down." He claimed to hit the gas before realizing the truck was in park, accidentally revving the engine. Putting the truck in drive, Middleton saw Brown was in front of him and went to the right of him. Middleton claims he accidentally hit Brown with his truck's side mirror. From what he could tell, the side-view mirror was the only part of the truck that touched Brown. As soon as it happened, Middleton turned around to check on Brown, but he was gone.

¶9.     Brown briefly testified, affirming that he was homeless and sleeping in front of the former grocery store. He stated he was "run over by a white man in a white pickup truck" for no reason. The next day, he said the sheriff took him to the hospital. Officer Earl testified that after the accident, he had observed minor cuts and bruises on Brown's face and some blood.

## ANALYSIS

### I.      Admission of the Duty Tape

¶10.    Middleton argues he was prejudiced by the admission of Officer Earl's duty tape,

5

which was played to the jury. He claims his verbal statement was cumulative to his written statement and had no probative value. Instead, he argues the racially charged remarks in the tape inflamed the jurors, causing an unfair trial. This Court reviews the trial court's admission or exclusion of evidence for abuse of discretion. *Stone v. State*, 94 So. 3d 1078, 1081 (¶9) (Miss. 2012).

¶11. During Officer Earl's direct examination, defense counsel objected when the prosecutor asked what Middleton told him. Counsel argued this information was inadmissible because at that point Middleton had not been given a *Miranda*[2] warning informing him that any statements he made could be used against him. Outside the jury's presence, defense counsel moved to suppress Middleton's statements to the officer on the scene, all of which were recorded on the duty tape. The prosecutor sought to show the trial court that the statements were voluntary by questioning Officer Earl. The trial court determined that the statements were not made during a custodial interrogation; so Middleton was not entitled to a *Miranda* warning. The motion to suppress was denied. Over a renewed objection from the defense, the duty tape was admitted into evidence and played for the jury.

¶12. Now, Middleton argues that the trial court abused its discretion in allowing the highly prejudicial duty tape into evidence because the trial court failed to perform the requisite balancing test under Mississippi Rule of Evidence 403, which is "an ultimate filter through

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

6

which all otherwise admissible evidence must pass." *Welde v. State*, 3 So. 3d 113, 117 (¶15) (Miss. 2009) (quoting *Crawford v. State*, 754 So. 2d 1211, 1220 (¶23) (Miss. 2000)). The test is whether "the probative value of the evidence . . . outweigh[s] the prejudicial effect." *Id.* However, defense counsel's objection at trial was different: that the duty tape should have been excluded because Middleton had not been advised of his *Miranda* rights prior to giving any statements.

¶13. It is well established that "[o]ne may not raise an issue on appeal which was not raised in the trial court." *Osborne v. State*, 942 So. 2d 193, 200 (¶27) (Miss. Ct. App. 2006). Here, this issue is waived because it was not raised before the trial court.[3] Regardless of the waiver, the issue is without merit. The tape had probative value as to Middleton's motive and intent. On the tape, while initially apologetic about using a racial slur against Brown, as he recounted the incident to Officer Earl, Middleton became more agitated and angry. The jury could have deduced from Middleton's tone of voice that he was angry and frustrated enough to hit or clip Brown with his vehicle intentionally. The tape was more probative of Middleton's state of mind at the time of the accident than the less detailed written statement. For example, the written statement excludes references to wanting to "kill" Brown.

¶14. Further, Middleton never requested a Rule 403 balancing test, and it is his duty to do

---

[3] Middleton did raise this argument in his post-trial motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial, but not at the time of his motion to suppress during the trial.

7

so. "[T]he onus [is] on the parties" to request the trial court perform the test "with regard to relevant evidence which may otherwise be excluded . . . ." *McLaurin v. State*, 31 So. 3d 1263, 1270 (¶31) (Miss. Ct. App. 2010). Accordingly, this issue is without merit.

## II.     Sufficiency of the Evidence

¶15.    Next, Middleton argues the trial court erred in denying his motion for a directed verdict because the State presented no evidence that Middleton's pickup truck was a deadly weapon, or was used as a means likely to produce death or serious bodily harm, or that Middleton intended to cause any injury.

¶16.    "The sufficiency of the evidence is challenged with a motion for a directed verdict, a request for a peremptory instruction, or a motion for judgment notwithstanding the verdict (JNOV)." *Pace v. State*, 242 So. 3d 107, 117 (¶24) (Miss. 2018). "On review of the sufficiency of the evidence, th[e reviewing court] considers the trial court's ruling at the last time the sufficiency of the evidence was challenged." *Warren v. State*, 187 So. 3d 616, 627 (¶29) (Miss. 2016). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at (¶30). The reviewing court "must accept as true all evidence consistent with . . . guilt." *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006).

¶17.    At the conclusion of the State's case-in-chief, defense counsel moved for a directed verdict on the charge of aggravated assault. Under Mississippi Code Annotated section 97-

3-7(2)(a)(ii) (Rev. 2014), a person is guilty of aggravated assault when he or she "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Middleton argues that "on its face," a motor vehicle is not a dangerous weapon or means to produce serious bodily harm, but merely a mode for transportation. He claims the State did not show the pickup truck was used with the intent to harm Middleton. Moreover, in his brief Middleton inaccurately states that the only actual witnesses who saw the collision were himself and Brown.

¶18. Middleton's argument is without merit. After its case-in chief, the State provided sufficient evidence for the trial court to deny Middleton's directed verdict. Under the sufficiency of evidence standard, all favorable inferences supporting guilt must be accepted as true. *Robinson*, 940 So. 2d at 240 (¶13). While "on its face" a vehicle may not be a deadly weapon, this Court has held that "[t]here can be no doubt that a motor vehicle used for the purpose of intentionally running over another person is a deadly weapon within the contemplation of this State's aggravated assault statute." *Genry v. State*, 767 So. 2d 302, 312 (¶36) (Miss. Ct. App. 2000). The State elicited sufficient evidence that Middleton used his truck with the purpose and intent of harming Brown. Middleton admitted, and witness testimony corroborated, his anger and frustration toward Brown for loitering in the parking lot and scaring tenants, at one point calling Brown a "son-of-a-b****" on the duty tape. From the barber shop, Houston saw the two men having a verbal disagreement before

9

Brown was hit. Barber Betts also heard Middleton and Brown screaming and cursing at one another, with Middleton at one point telling Brown, "I'm gone kill you, n*****." Contrary to Middleton's assertion that there were no eyewitnesses to the collision, Betts then saw Middleton rev his white truck's engine and hit Brown. An "advanced rate of speed," as Middleton contends, was not necessary to convert a multiple-ton pickup truck into a deadly weapon or instrument of harm.

¶19. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the State presented the essential elements of aggravated assault beyond a reasonable doubt. Accordingly, we affirm Middleton's conviction and sentence.

¶20. **AFFIRMED.**

**GRIFFIS, C.J., CARLTON, P.J., WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**

10